752 F.2d 582
 11 Collier Bankr.Cas.2d 1367, 12 Bankr.Ct.Dec. 949,
Bankr. L. Rep. P 70,249
 In re Donald W. HALL and Lucile E. Hall, Debtors,
Donald W. HALL and Lucile E. Hall, Plaintiffs-Appellees,
v.
FINANCE ONE OF GEORGIA INC., Defendant-Appellant.
In re Joe E. STUBBLEFIELD and Vicky L. Stubblefield, Debtors,
Joe E. STUBBLEFIELD and Vicky L. Stubblefield, Plaintiffs-Appellees,
v.
FINANCE ONE OF GEORGIA INC., Defendant-Appellant.
In re Clinton Eugene REGISTER and Doris Elaine Register, Debtors,
Clinton Eugene REGISTER and Doris Elaine Register,
Plaintiffs-Appellees,
v.
KENNESAW FINANCE COMPANY, Defendant-Appellant.
In re Ronald Gary HALL, Debtor,
Ronald Gary HALL, Plaintiff-Appellee,
v.
FINANCE ONE OF GEORGIA INC., Defendant-Appellant.
 Nos. 84-8065 to 84-8067 and 84-8132.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 4, 1985.
 
 Richard V. Karlberg, Jr., Atlanta, Ga., for defendant-appellant.
 Marshall H. Jaffe, Atlanta, Ga., Paul Parker, Rose H. Staples, Decatur, Ga., for plaintiffs-appellees.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before KRAVITCH and ANDERSON*, Circuit Judges, and ATKINS**, District Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 These four cases were consolidated for appeal because they involve common issues of bankruptcy law. The two questions presented are: (1) whether debtors in bankruptcy whose property exemptions are defined by Georgia law may use 11 U.S.C. Sec. 522(f) to avoid liens that encumber the property they seek to exempt; and (2) whether debtors who opt to file for Chapter 13 rehabilitation are entitled to use that same provision. The courts below ruled in favor of the debtors on both questions. We affirm.
 
 I.
 
 2
 On June 4, 1982, plaintiffs in Register v. Kennesaw Finance Co., No. 84-8067, voluntarily filed a petition for relief under Chapter 13 of the Bankruptcy Code. One of plaintiffs' creditors, defendant Kennesaw Finance Company, held a nonpossessory, nonpurchase-money security interest in the Registers' household goods and furniture as collateral for a loan extended to plaintiffs. The indebtedness on the loan greatly exceeded the value of the collateral. After they filed for bankruptcy, plaintiffs brought this action in bankruptcy court to avoid defendant's security interest under 11 U.S.C. Sec. 522(f) (1982), because the lien prevented plaintiffs from exempting from the estate the property it encumbered. The bankruptcy court granted plaintiffs' motion for summary judgment, and the district court affirmed this ruling. Defendant brought this appeal, seeking reinstatement of the lien.
 
 
 3
 The other three cases arose in a similar fashion. Each case involved the same defendant; they were thus consolidated for determination in both the bankruptcy court and the district court. Plaintiffs in Ronald Hall v. Finance One, No. 84-8132, filed their Chapter 13 petition on April 4, 1982. Stubblefield v. Finance One, No. 84-8066, began when plaintiffs sought relief under Chapter 13 on April 1, 1982. February 2, 1982, was the date on which plaintiffs filed their Chapter 13 petition in Donald Hall v. Finance One, No. 84-8065. Shortly after their petitions were filed, plaintiffs in each case sought to avoid defendant's nonpossessory, nonpurchase-money security interests in their household goods and furniture pursuant to section 522(f), claiming the liens impaired exemptions to which plaintiffs were entitled. In none of the cases did the value of property covered by the liens equal or exceed the amount of the loan outstanding. The bankruptcy court ordered the liens avoided and the district court affirmed. This appeal ensued.
 
 II.
 
 4
 Appellants contend that the Georgia Legislature has defined the exemptions to which plaintiffs claim they are entitled in a way that prevents them from using the federal lien-avoidance statute, section 522(f). Specifically, they point out that Georgia law permits a debtor in bankruptcy to exempt property only if it is not encumbered by a lien. To evaluate their argument properly, we first explore the statutory scheme of property exemptions to which debtors in bankruptcy can avail themselves.
 
 
 5
 Upon the filing of a petition in bankruptcy, all of the debtor's legal and equitable interests in property, with few exceptions not relevant here, become property of the estate. 11 U.S.C. Sec. 541(a) (1982). After the property comes into the estate, the debtor is allowed to exempt certain items under 11 U.S.C. Sec. 522(b) (1982). Congress specified the kinds and amount of property that may be exempted in section 522(d). In addition, debtors may retain property defined as exempt by other federal laws. 11 U.S.C. Sec. 522(b)(2)(A). Once the property is removed from the estate, the debtor may use it as his own. Liens valid in bankruptcy that cover exempt property, however, are preserved, and creditors holding such liens may enforce them against exempt property. 11 U.S.C. Sec. 522(c)(2) (1982). Section 522(f), however, permits a debtor to avoid certain kinds of liens encumbering particular kinds of property to the extent that the lien impairs an exemption. Section 522(f) provides:
 
 
 6
 Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
 
 
 7
 (1) a judicial lien; or
 
 
 8
 (2) a nonpossessory, nonpurchase-money security interest in any--
 
 
 9
 (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
 
 
 10
 (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
 
 
 11
 (C) professionally prescribed health aids for the debtor or a dependent of the debtor.
 
 
 12
 Thus, section 522(f) permits the debtor to enjoy an exemption even if property has been fully encumbered by a lien.
 
 
 13
 The new Bankruptcy Code permits states to "opt out" of the federal list of exemptions described in section 522(d), making them inapplicable to their residents who file petitions for relief under the bankruptcy laws. 11 U.S.C. Sec. 522(b)(1).[1] The Georgia Legislature has taken advantage of this opportunity and enacted a statute precluding a debtor from using the federal list of exemptions. O.C.G.A. Sec. 44-13-100(b). Thus, debtors who file for bankruptcy in Georgia may claim only those exemptions allowed by state law. The Georgia exemption relied upon by the debtors in this case provides as follows:
 
 
 14
 (a) In lieu of the exemption provided in Code Section 44-13, any debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy, the following property:
 
 
 15
 ....
 
 
 16
 (4) The debtor's interest, not to exceed $200.00 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor. The exemption of the debtor's interest in the items contained in this paragraph shall not exceed $3,500.00 in total value;
 
 
 17
 O.C.G.A. Sec. 44-13-100(a)(4).
 
 
 18
 Appellants' claim is that the Georgia Legislature has defined the exemptions to preclude debtors from avoiding liens under section 522(f). They assert that the phrase "debtor's interest" as used in the exemption statute indicates that a debtor may exempt property only to the extent of his or her equity. Thus, because Georgia law forbids the debtor to exempt property to the extent it is encumbered by a lien, the liens do not impair exemptions to which the debtors are entitled under section 522(b), as required by the language of section 522(f). In support, creditors rely on McManus v. Avco Financial Services (Matter of McManus), 681 F.2d 353 (5th Cir.1982), and Giles v. Credithrift of America (In Re Pine), 717 F.2d 281 (6th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1711, 80 L.Ed.2d 183 (1984). In McManus, the Fifth Circuit reviewed efforts by Louisiana debtors to avoid liens covering their household goods and furnishings. Louisiana had enacted an exemption statute and opted out of the federal exemption scheme. As part of the statute, the Louisiana Legislature included a provision forbidding debtors to exempt household goods and furnishings held subject to a chattel mortgage. Observing that Congress's authorization in section 522(b) for the states to enact their own exemption statutes was indeed a broad one, 681 F.2d at 355, the Fifth Circuit determined that Louisiana's decision to exclude encumbered property from its exemption scheme was permissible. Id. at 357. Section 522(f) allows the debtor to avoid only those liens encumbering property that is exempt under section 522(b), and property subject to a chattel mortgage was defined as not exempt. Therefore, the court reasoned, the lien avoidance provision could not be used in that case because the lien did not impair an exemption to which the debtor was entitled under section 522(b). Id.[2] The Sixth Circuit employed similar reasoning to reach the same conclusion in Giles, when construing Georgia and Tennessee statutes that, according to the court, allowed exemptions only to the extent of the debtor's equity. The court observed that by enacting the opt-out scheme without limitation, Congress expressed its preference for state control of exemptions. 717 F.2d at 284.
 
 
 19
 The only relevant authority in this circuit is the decision in Maddox v. Southern Discount Co., (In re Maddox), 713 F.2d 1526 (11th Cir.1983). In Maddox, a panel of this court adopted a district court's decision holding that the phrase "debtor's interest" as used in the Georgia exemption statute, section 44-13-100(a)(4), did not mean debtor's equity, but instead was a "broad term encompassing many rights of a party...." 713 F.2d at 1530. In strong dicta, the district court rejected the Fifth Circuit's conclusion in McManus, observing that the dissenting opinion in that case was more persuasive. Id. Since Maddox, however, the Georgia Court of Appeals has defined the phrase "debtor's aggregate interest," as used in another part of the Georgia exemption statute, section 44-13-100(a)(1), as the unencumbered portion of the property. Wallis v. Clerk, Superior Court DeKalb County, 166 Ga.App. 775, 305 S.E.2d 639, 641 (1983). It being clear that Georgia debtors are not entitled to claim property as exempt to the extent that it is encumbered, appellants ask us to adopt the Fifth and Sixth Circuits' reasoning to preclude the operation of the federal lien-avoidance provision in this case.
 
 
 20
 We agree that the lien-avoidance power is tied directly to the exemption provision, section 522(b). We do not believe, however, that this compels the result urged by the creditors in this case. In our opinion, the appellants' reasoning conflicts with the purpose of section 522(f). This section operates to permit a debtor to avoid the fixing of a lien on property if that avoidance would allow the debtor to enjoy an exemption. Brown v. Dellinger (In re Brown), 734 F.2d 119, 125 (2d Cir.1984). Thus, the very purpose of the statute is to permit debtors to claim, as exempt, property completely or partially secured by an otherwise valid lien. To permit states to inhibit the operation of the lien-avoidance provision simply by defining all lien-encumbered property as "not exempt" would render the statute useless, a result inconsistent with the well-established principle of statutory construction requiring that all parts of an act be given effect, if at all possible. Administrator, Federal Aviation Administration v. Robertson, 422 U.S. 255, 261, 95 S.Ct. 2140, 2145, 45 L.Ed.2d 164 (1975); Weinberger v. Hynson, Westcott & Dunning, 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 (1973); see Payne v. Panama Canal Co., 607 F.2d 155, 164 (5th Cir.1979).
 
 
 21
 It is true that the statute prescribes that debtors may not invoke their powers under section 522(f) except to affect property that is exempt under section 522(b). There may, however, be several reasons why a debtor cannot exempt property. A state may decide in enacting its list of exemptions that a particular kind of property, furniture for example, will not be exempt. We assume for purposes of this case that there is nothing in the Bankruptcy Code that prohibits such a classification.[3] Likewise, the state legislature may determine that lien-encumbered property cannot be exempted, even if the particular kind of property that is encumbered by the lien is defined as exempt. We do not suggest that states are prohibited from defining lien-encumbered property as not exempt. Any such decision would, however, be subject to the provisions of section 522(f).[4] Thus, property encumbered by judicial liens and nonpossessory, nonpurchase-money security interests could still be exempted, notwithstanding the state's classification of lien-encumbered property as not exempt.[5]
 
 
 22
 The language of the "opt-out" provision contained in section 522(b)(1) does not suggest a contrary result. But see Giles, 717 F.2d at 284 (Congress expressed preference for state control of exemptions by enacting the "opt-out" provision without limitation; therefore, it is doubtful that Congress intended section 522(f) to limit the kind of property states could define as exempt). In granting the states the power to opt out of the federal list of exemptions, Congress did not appear to place any limits on the states' ability to do so.[6] This broad grant of power, however, does not mean that Congress authorized the states to enact legislation that conflicts with any other provision of the Bankruptcy Code. Rather, the import of the provision is merely that a state may decide to require that its debtors rely upon state-defined exemptions, instead of the list of federal exemptions contained in section 522(d). Cf. In re Storer, 13 B.R. 1, 3 (Bankr.S.D.Ohio 1980) (drawing a distinction between an exemption and the operation of a lien upon an exemption; with respect to the latter, no state may deprive a debtor of the right to avoid a lien authorized by the Bankruptcy Code).
 
 
 23
 The legislative history of the new Bankruptcy Code supports our view that the lien-avoidance provision was intended to apply to state exemptions, notwithstanding state limitations on the ability of debtors to exempt lien-encumbered property.[7] The Senate version of the bill would have entitled debtors to property exemptions defined by state law. The bill also contained a lien-avoidance section identical to the one codified at 11 U.S.C. Sec. 522(f), and, in the report accompanying the bill, the Senate described the provision as allowing debtors to exempt property "to the extent that the property could have been exempted in the absence of the lien." S.Rep. No. 989, 95th Cong., 2d Sess., 76 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5861. The bill that originally passed the House would have enabled a debtor to choose between the federal list that was ultimately codified at 11 U.S.C. Sec. 522(d) and state exemptions, and also contained a lien-avoidance provision. The House's description of section 522(f) is identical to that contained in the Senate report. H.R.Rep. No. 595, 95th Cong., 2d Sess., 362 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News, 5963, 6318. In our opinion, it is important that both the Senate and the House considered the debtor's lien-avoidance power in conjunction with exemptions defined by state law. This evidences that debtors' lien-avoidance powers would not be eviscerated by state-defined exemptions. See Haines, Section 522's Opt-Out Clause: Debtors' Bankruptcy Exemptions in a Sorry State, 1984 Ariz.St.L.J. 1, 30-31. Hence we doubt that Congress intended that states could limit the debtor's power as appellants suggest. Of course, the compromise exemption scheme that ultimately passed and is now codified contains a federal list of exemptions, but allows states to deny their residents these exemptions, a result not contemplated by either the House or Senate bill. As discussed previously, however, we do not believe that this compromise changes our analysis.
 
 
 24
 The legislative history further reveals that Congress enacted section 522(f) as a response to what it viewed as unconscionable creditor practices in the consumer loan industry. H.R.Rep. No. 595, supra, at 126-27; 1978 U.S.Code Cong. & Ad.News, 6087-88. Congress evidenced its concern about overreaching creditors who obtained nonpossessory, nonpurchase-money security interests covering a substantial part of debtors' otherwise exempt property. Congress found that debtors usually granted blanket security interests, and agreed to waive their right to exempt property, without understanding the consequences of their actions. The property subject to these liens often was of little value to the creditors, because of its low resale value, but its replacement cost to debtors was usually high. Accordingly, creditors, although they did not view the property as a source of funds to which they could turn in the event of default, often used the threat of foreclosure to coerce debtors into making payments. Under section 522(f), debtors can now protect themselves from this practice by avoiding these liens in bankruptcy. In addition, Congress hoped that the lien-avoidance provision would leave enough property in the hands of the debtor to insure a "fresh start" after discharge. These concerns are equally applicable to debtors who must rely on state exemptions. McManus, 681 F.2d at 359 (Dyer, J., dissenting). Although Congress may have undercut the purpose of the exemption scheme by permitting states to opt-out, we disagree that Congress meant to allow unlimited state action on this matter. We hold, therefore, that the Georgia exemptions do not preclude the operation of section 522(f).[8]
 
 III.
 
 25
 Appellants next argue that the lien-avoidance provision is inapplicable in Chapter 13 proceedings. Nothing in section 522, however, explicitly limits its application to Chapter 7 proceedings. Indeed, section 103(a) of the Bankruptcy Code expressly makes Chapter 1, Chapter 3, and Chapter 5 (of which section 522 is part), applicable to all bankruptcy proceedings.[9] Nevertheless, Congress hardly could have intended that every provision of Chapters 1, 3 and 5 apply to every bankruptcy case. Attributing such a meaning to section 103(a) would create irreconcilable conflicts between particular provisions of the Bankruptcy Code.[10] Appellants argue that such a conflict is presented here, in that section 522(f) contradicts section 1325(a)(5)(B), which conditions court approval of a plan for rehabilitation filed by a Chapter 13 debtor upon retention of a lien by a secured creditor who objects to the plan.[11] At least one bankruptcy court has agreed with this analysis. Aycock v. Heritage Bank (Matter of Aycock), 15 B.R. 728, 730 (Bankr.E.D.N.C.1981).
 
 
 26
 We do not perceive a conflict between these two sections. A creditor's claim against the bankruptcy estate is equal to the amount the debtor owes, subject to the provisions of section 502. Section 506, which divides a creditor's claim into secured and unsecured portions, provides:
 
 
 27
 An allowed claim of a creditor secured by a lien on property on which the estate has an interest ... is a secured claim to the extent that the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent of the value of such creditor's interest ... is less than the amount of such allowed claim.
 
 
 28
 11 U.S.C. Sec. 506(a) (1982). The provisions of section 1325(a)(5) are limited to creditors holding an "allowed secured claim." A creditor can hold an allowed secured claim on property only to the extent of the estate's interest in such property. Any remaining balance owed to the creditor is unsecured. See Barash v. Public Finance Corp., 658 F.2d 504, 507 (7th Cir.1981). The estate's interest is equal to the value of the non-exempt portion of the collateral. With respect to the exempt portion of collateral, the estate has no interest; thus, the creditor cannot hold an allowed secured claim on the exempt portion of collateral. See 3 Collier on Bankruptcy p 506.04 at 506-15, 16 (15th Ed.1984). It is true that if a creditor whose lien is avoided to remove the impairment of an exemption retains a secured claim because the exemption does not exceed the value of the property, the plan must permit that creditor to retain a lien, if the creditor so desires. Assuming the value of the exemption exceeds the value of the collateral, however, the estate no longer has an interest in the property, and, by definition, the creditor no longer has an allowed secured claim. Thus, there is no conflict between the lien-avoidance provision and the dictates of section 1325(a)(5)(B). See Baldwin v. Financial Services, 22 B.R. 507, 509 (D.Del.1982); Hagerman v. Dial Finance Co., (In Re Hagerman), 9 B.R. 412, 413-14 (Bankr.W.D.Mich.1981).[12]
 
 
 29
 Appellants advance a more fundamental objection to the debtors' ability to avoid the liens in this case. They contend that the property exemptions in bankruptcy serve only a limited function in Chapter 13 proceedings: to determine how much the plan should provide for each claim for purposes of sections 1325(a)(4)--which makes confirmation of the plan dependent upon unsecured claims being allocated a value equal to that the claim would have in a chapter 7 liquidation--and 1325(a)(5).[13] See Armstrong v. Lindberg, 735 F.2d 1087, 1089 (8th Cir.1984). Beyond this, Chapter 13 debtors need not actually exempt property from the estate. In a Chapter 7 liquidation, in which the trustee liquidates all property of the estate to satisfy creditors' claims, the exemptions insure the debtor is left with enough property to guarantee a "fresh start" after discharge of the debts. Chapter 13, on the other hand, permits a debtor to retain possession of property of the estate. 11 U.S.C. Sec. 1306(b) (1982). Moreover, once the plan has been confirmed, the property of the estate vests in the debtor free from claims of creditors provided for by the plan. 11 U.S.C. Sec. 1327(b), (c) (1982). Thus the Chapter 13 debtor's fresh start is protected through methods other than the property exemptions, and there is no need to "exempt" property from the estate. The exemptions having no relevance beyond the limited purpose previously discussed, appellants argue that the section 522(f) is inapplicable to Chapter 13 proceedings, as the liens covering the debtors' property do not impair exemptions to which the debtors are entitled.
 
 
 30
 Although the exemptions may be of less practical importance in a Chapter 13 proceeding, see 5 Collier on Bankruptcy, p 1300.81 at 1300-158 (15th ed. 1984), we believe that the exemptions, and section 522(f), must be considered in determining the secured or unsecured status of claims filed by creditors. Holders of secured claims are afforded much greater protection than holders of unsecured claims in Chapter 13 proceedings. The economic benefit to Chapter 13 debtors who invoke section 522(f) to convert secured claims into unsecured claims is enormous. See, e.g., McLaughlin, Lien Avoidance by Debtors in Chapter 13 of the Bankruptcy Reform Act of 1978, 58 Am.Bank.L.J. 45, 64-65 (1984). Whether the exemptions play a role more significant than this in a Chapter 13 proceeding is not relevant to the issue at hand--that is, whether the lien-avoidance provision can be used to alter a creditor's secured status in a Chapter 13 plan. Section 522(f) is applicable in Chapter 7 proceedings; if we precluded Chapter 13 debtors from using this provision, we may make the rehabilitation proceeding a less attractive alternative. One of Congress's goals in amending the Bankruptcy Code in 1978 was to correct several deficiencies in the old laws that discouraged or prevented debtors from opting for Chapter 13 rehabilitation. S.Rep. No. 595, supra, at 12-13; 1978 U.S.Code Cong. & Ad.News, 5798-99. In light of this, we decline to create a disincentive that may alter the legislative balance struck between Chapter 7 and Chapter 13.
 
 
 31
 Given Congress's statement in section 103(a), there is a heavy burden placed upon appellants to establish that debtors should not be able to use section 522(f) to avoid liens because property exemptions are not as important in Chapter 13 proceedings as they are for debtors seeking relief under Chapter 7.[14] We hold, therefore, that Chapter 13 debtors are entitled to use section 522(f) to avoid liens that impair their right to exempt property. Our view is consistent with that taken by the overwhelming majority of courts that have addressed this issue.[15] See, e.g., Transouth Financial Corp. v. Paris, (In re Paris), 26 B.R. 184 (W.D.Tenn.1982); Baldwin, 22 B.R. at 509-10; Fisk v. Allis Chalmers Credit Corporation, (In re Fisk), 36 B.R. 924 (Bankr.W.D.Mich.1984); Slykerman v. Associates Financial Services (Matter of Slykerman), 29 B.R. 82 (Bankr.E.D.Mich.1983).
 
 
 32
 Based on the foregoing analysis, the judgments of the courts below are AFFIRMED.
 
 
 
 *
 Honorable R. Lanier Anderson, subsequent to oral argument, became disqualified and did not participate in this opinion. Accordingly this decision is rendered by Judges Kravitch and Atkins, acting as a quorum
 
 
 **
 Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Section 522(b) provides in part:
 (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either--
 (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
 (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place;
 ....
 
 
 [2]
 Judge Dyer, sitting by designation, dissented from the majority's conclusion. He concluded that Congressional authorization to opt out of the federal list of exemptions did not empower the states to enact legislation that conflicts with section 522(f). 681 F.2d at 357-59
 
 
 [3]
 The extent to which a state's list of property exemptions may provide less for the debtor than does the federal list contained in section 522(d), see infra note 6, is not before this court today, and we do not intimate any view on this issue
 
 
 [4]
 Conflicts between state and federal law must be resolved in favor of the federal provision. U.S. Const., Art. VI, cl. 2; see Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); see also infra p. 587
 
 
 [5]
 There are, of course, other liens that encumber property, such as purchase-money security interests and statutory liens, and section 522(f) would not operate to allow exemptions for property covered by these liens if the state has decided that lien-encumbered property is not exempt
 
 
 [6]
 Indeed, at least two circuit courts have made this observation in upholding the constitutionality of state laws that provided for less exemptions than did the federal law. Rhodes v. Stewart, 705 F.2d 159 (6th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 427, 78 L.Ed.2d 361 (1984); Matter of Sullivan, 680 F.2d 1131 (7th Cir.1982), cert. denied, 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1983)
 
 
 [7]
 The McManus court concluded that there was no ambiguity in the language of the statute, and thus declined to discuss the legislative history. 681 F.2d at 357 n. 7. The Sixth Circuit in Pine observed that the legislative history was inconclusive on the issue, apparently because of the addition of the "opt-out" provision, and therefore resorted to what it termed as the "clear language of the statute." 717 F.2d at 284. We note, however, that there is no principle that forbids examination of legislative history, "however clear the words [of a statute] may appear on superficial examination." Train v. Colorado Public Interest Research Group, Inc., 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976). Unlike the Pine Court, we do not believe that the addition of the opt-out provision renders the legislative history of section 522(f) ambiguous
 
 
 [8]
 Indeed, at least two bankruptcy courts, apparently troubled by the result achieved by the Sixth Circuit in Pine, have undertaken to write lengthy opinions on the operation of section 522(f) on exemptions defined by state law. Matter of Lewis, 38 B.R. 113 (Bankr.S.D.Ohio 1984) (distinguishing Pine ); In re Law, 37 B.R. 501 (Bankr.S.D.Ohio 1984) (outcome controlled by Pine but court undertook extensive explanation of why the Pine court's conclusion was incorrect)
 
 
 [9]
 Section 103(a) provides as follows:
 Except as provided in section 1161 of this title, Chapters I, III, and V of this title apply in a case under Chapter VII, XI, or XIII of this title.
 
 
 [10]
 For example, section 1306(b), which permits the debtor in a Chapter 13 proceeding to remain in possession of all property of the estate, would conflict with section 521(3), which requires the debtor to surrender all property of the estate to the trustee
 
 
 [11]
 This statute provides as follows:
 A court shall confirm a plan if-- ...
 (5) with respect to each allowed secured claim provided for by the plan--
 (A) the holder of such claim has accepted the plan;
 (B)(i) the plan provides that the holder of such claim retain his lien securing such claim; and
 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
 (C) the debtor surrenders the property securing such claim to such holder; ...
 
 
 [12]
 Those creditors holding allowed unsecured claims are provided for by section 1325(a)(4), and they are entitled to receive in a Chapter 13 plan only the amount they would have received in a Chapter 7 liquidation
 
 
 [13]
 The exemptions and lien-avoidance provision also seem to be important for purposes of determining whether or not the debtor is entitled to a hardship discharge under 11 U.S.C. Sec. 1328
 
 
 [14]
 Although creditors might perceive that this result is unfair, we believe that their arguments should be presented to Congress. It is one thing for a court to choose between statutory provisions that are in direct conflict, and quite another for a court to evaluate policy arguments that contradict the language of a statute and should be addressed by a legislature. Appellants' contentions in this case are much closer to the latter category
 
 
 [15]
 We do not believe that Armstrong v. Lindberg, 735 F.2d 1087 (8th Cir.1984), is inconsistent with our conclusion in this case. In Armstrong, the court held that a debtor who converts a bankruptcy proceeding from Chapter 13 to Chapter 7 is not forced to rely upon the exemptions claimed in the earlier proceeding. 735 F.2d at 1091. In making its decision, the court relied in part on the notion that debtors list exemptions for limited purposes in a Chapter 13 proceeding: to allow the court to determine how much the creditors' claims would receive in a Chapter 7 liquidation, and to permit creditors to determine whether the Chapter 13 plan should be accepted. Id. at 1089
 It may be true, as the Armstrong court observed, that there is no estate from which property could be exempted in a Chapter 13 proceeding. Id. Nevertheless, even if the Chapter 13 debtor need only list exemptions for the limited purposes outlined by the Armstrong court, for purposes of sections 1325(a)(4) and (a)(5), a debtor must file a complaint to avoid a lien, in order to alter the secured status of a creditor's claim covering exempt property. In re McKay, 732 F.2d 44, 48 (3d Cir.1984).