In the Matter of Don Gordon NEHRING, Arlene Gail Nehring, dba Nehring Upholstery, Debtors.

Bankruptcy No. 87–101–C.

United States Bankruptcy Court,
S.D. Iowa.

March 22, 1988.

Pat W. Brooks, Marshalltown, Iowa, for debtors.

Donald F. Neiman, Des Moines, Iowa, trustee.

Charles King, Marshalltown, for Clapsaddle.

## ORDER ON OBJECTION TO DEBTORS' CLAIM OF EXEMPT HOMESTEAD AND MOTION TO AVOID LIEN

LEE M. JACKWIG, Chief Judge.

On April 14, 1987 a telephonic hearing on C. Vernon Clapsaddle's objections to debtors' claim of exempt homestead and motion to avoid lien was held in Des Moines, Iowa. Clapsaddle objected to the debtors' homestead exemption claim on March 13, 1987 and the debtors resisted on March 18, 1987. On this same date, the debtors moved to avoid a lien they anticipated would be placed on the homestead by Clapsaddle. He resisted the motion on April 10, 1987 and filed a motion for relief from stay.[1] Pat W. Brooks appeared on behalf of the debtors and Charles King appeared on behalf of Clapsaddle. The debtors filed their brief on April 10, 1987 and Clapsaddle filed his brief on April 28, 1987.

### FACTUAL BACKGROUND

The facts of this case are undisputed. On or about July 6, 1983, the debtors executed and delivered to G.S. Clapsaddle a promissory note in exchange for a $10,-000.00 loan. G.S. Clapsaddle is now deceased and C. Vernon Clapsaddle is the executor of G.S. Clapsaddle's estate. On or about September 12, 1986, the debtors acquired a house they consider their homestead. The debtors filed a joint petition for relief under Chapter 7 on January 14, 1987. As of that date the amount owing on the Clapsaddle promissory note stood at $12,-000.00. Clapsaddle's claim has not been reduced to judgment.

#### Relevant Statutory Provisions

11 U.S.C. section 522(f), which is central to the Code's lien avoidance provisions, states in part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of

---

1. The debtors resisted the motion for relief from stay on April 17, 1987. The motion for relief was discussed but not taken under advisement at the April 14, 1987 hearing.

a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien;

11 U.S.C. section 522(b)(1) permits states to "opt out" of the federal exemption scheme. Iowa has done so by virtue of Iowa Code section 627.10. With respect to a homestead, Iowa Code section 561.16 determines the extent of the exemption. It provides in part:

> The homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary....

This general exemption is qualified by Iowa Code section 561.21(1) which reads:

> The homestead may be sold to satisfy debts of each of the following classes:
>
> (1) Those contracted prior to its acquisition, but only to satisfy a deficiency remaining after exhausting the other property of the debtor, liable to execution.

## DISCUSSION

Clapsaddle argues that the debtors may not seek a homestead exemption as to his unsecured claim because they incurred the debt prior to acquiring their homestead. Accordingly, he maintains that the debtors may not avoid any judicial lien he may acquire because any such lien would not impair an exemption to which the debtors are entitled under Iowa law.

The debtors contend that the antecedent debt provision is simply an *exception* to the homestead exemption, meaning that a lien that attaches to a homestead as a result of an antecedent debt is a lien that impairs an exemption. Thus, the debtors assert that any lien Clapsaddle may acquire would be subject to lien avoidance. They argue that Clapsaddle's construction of 11 U.S.C. section 522(f) frustrates the underlying legislative intent.

The balance or perhaps tension between 11 U.S.C. section 522 and various state exemption laws has generated divergent caselaw. *Matter of McManus,* 681 F.2d 353 (5th Cir.1982) represents one line of decisions. In that case, the debtors sought to avoid liens on household goods and furnishings. Louisiana had opted out of the federal exemption scheme so the court turned to state law to determine whether an exemption was available. One section provided that household goods and furnishings were exempt. However, another provision stated that household goods and furnishings subject to a chattel mortgage were not exempt. The majority opinion found that under Louisiana law the debtors would not have been entitled to an exemption because they had subjected the goods and furnishings to a chattel mortgage. Consequently, the court ruled that the debtors could not utilize section 522(f) to avoid the chattel mortgage lien.

The Fifth Circuit followed its *McManus* analysis in *Matter of Allen,* 725 F.2d 290 (5th Cir.1984). The debtors sought to exempt farm machinery that was subject to a lien. The Texas Statute in question provided for a personal property exemption except to the extent of encumbrances. The court ruled the property was not exempt under Texas law and, therefore, the liens could not be avoided under section 522.

*Matter of McManus* was followed in *In re Pine,* 717 F.2d 281 (6th Cir.1983), *cert. denied,* 466 U.S. 928, 104 S.Ct. 1171, 80 L.Ed.2d 183 (1984). There the state law in question did not permit debtors to exempt household goods to the extent they were encumbered by a lien. The court recognized the "fresh start" purpose of the Bankruptcy Code but found that "the clear language of the statute takes precedence over the more general rehabilitative policies underlying the Act." *Id.* at 284. The court saw nothing on the face of section 522 that limited states in deciding what property was exempt. As a result, the court held that the debtors could not avoid liens on their household goods since they were encumbered and therefore not exempt under state law.

A second line of decisions is critical of the *McManus* rationale. For example, the court ruled in *In re Hall,* 752 F.2d 582

(11th Cir.1985), that lien avoidance was intended to apply to state exemptions despite specific limitations upon the ability of debtors to exempt encumbered property. The court examined the legislative history of section 522 and concluded that Congress did not arrange for states to have unbridled power in limiting a debtor's ability to avoid liens. The court observed that the report accompanying the Senate version of section 522 revealed that the provision would have permitted debtors to claim exemptions defined by the state and to exempt property "to the extent that the property could have been exempted in the absence of the lien." *Id.* at 587, *quoting*, S.Rep. No. 989, 95th Cong., 2d Sess., 76 (1978), *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5787, 5862. The court also noted that the House version permitted the debtor to choose between the federal exemptions and the state exemptions and avoid liens. *In re Hall*, 752 F.2d at 587, *quoting* H.R.Rep. No. 595, 95th Cong., 2d Sess., 362 (1978), *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS, 5787, 5963, 6318. Although the final version of section 522(f) permits states to opt out of the federal exemption scheme, the court found that this did not warrant changing its conclusions concerning legislative intent.

In the case of *In re Thompson*, 59 B.R. 690, 693 (Bankr.W.D.Texas 1986), the court criticized the *McManus* rationale utilized in *In re Allen*, 725 F.2d 290 (5th Cir.1984):

> Essentially, *Allen* states that once a consensual lien is created by the debtor in otherwise exempt (at state law) personalty, § 522(f) cannot apply because the "exemption is not otherwise available." Had this been Congress' intent, § 522(f) would be a nullity where any debtor anywhere in the country elected to use state exemptions *since no state in the union voids the ability of debtors to consent to nonpurchase money, nonpossessory liens upon otherwise exempt personalty.* (Emphasis in the original.)

The court also found that the logical and plain meaning of section 522(f) is that a debtor may avoid a lien on property that otherwise is exempt except for the lien.

Although compelled to follow the Sixth Circuit in *In re Pines*, 717 F.2d 281 (6th Cir.1983), the court in *In re Law*, 37 B.R. 501 (Bankr.S.D.Ohio 1984), observed that the *Pines* decision ran afoul of legislative intent and abused principles of statutory construction. Specifically, the court found that the *Pines* reasoning would contravene the fresh start policy and would render section 522(f) superfluous.

The third line of cases employs a "but for" analysis in examining the relationship between section 522 and state exemption laws. The debtors in *In re Vaughn*, 67 B.R. 140 (Bankr.C.D.Ill.1986), moved to avoid liens on certain articles of personal property. The Illinois statute provided that a debtor could exempt an equity interest, not to exceed $2,000.00 in value, in personal property. In that case the creditor argued that the debtors could not avail themselves of lien avoidance because the debtors had no equity in the property in question and, hence, had no exemptions to claim. The court focused on the language of section 522(f) which provides that a debtor may avoid a lien only "to the extent that such lien impairs an exemption to which the debtor would have been entitled." The court reasoned that use of the word "would" suggests a "but for" analysis:

> [A] lien is voidable under that section if it impairs an exemption to which the debtor would have been entitled to under state law *but for* the lien. Stated another way, in order to determine if the lien impairs an exemption one looks to the exemptions available under state law 'as if the security interest in question did not exist.' [citations omitted] The lien avoidance provision of Section 522(f) is independent of the state opt-out provision of Section 522(b). Certainly the states are free to structure their exemption laws as they see fit. Notwithstanding a state law definition of lien encumbered property as nonexempt, a debtor may nonetheless avoid a lien on household goods under Section 522(f)(2)(A).

*In re Vaughn*, 67 B.R. at 142–143 (emphasis in the original); *see also, In re Weiss*, 51 B.R. 224, 226 (D.Colo.1985) ("Section

522(f), in effect, creates equity equal to the amount that could be exempted if the security interest did not exist").

To this court's knowledge, the Eighth Circuit Court of Appeals has not ruled on the issue under consideration. Decisions from both the Northern and Southern Districts of Iowa at both the bankruptcy court and district court levels have varied as much as the previously discussed opinions.

In the case of *In re Zeisman,* slip op. No. 83–03017 (Bankr.N.D.Iowa, May 31, 1985) [available on WESTLAW, 1985 WL 17362], the late Bankruptcy Judge William W. Thinnes commented that the fact the creditor reduced its note to judgment did not change the antecedent nature of the debt. He observed that the antecedent debt would have been insufficient to render the homestead non-exempt had the creditor not done so. Although he concluded that the judicial lien did attach to the homestead, Judge Thinnes voided the attachment pursuant to 11 U.S.C. sections 105(a) and 522(f)(1). He reasoned that Congress intended the bankruptcy courts to look to the nature of an asset to determine its exempt status regardless of any judicial lien and that allowing lien avoidance was consistent with the fresh start policy. Finally, Judge Thinnes distinguished his denial of lien avoidance in the case of an ex-spouse's lien against a homestead pursuant to state law as a limited curtailment of the debtor's fresh start. He emphasized that the state's interest in protecting a creditor with an antecedent debt is not as persuasive, especially in a case in which the creditor has not pursued opportunities to protect the claim.

Bankruptcy Judge Thomas Wood, sitting by designation in *In re McCormick,* slip op. No. 83–00024 (Bankr.N.D.Iowa, December 31, 1985), overruled an objection to a homestead exemption by a creditor who had failed to reduce an antecedent debt to judgment. Judge Wood observed that the automatic stay prevented the creditor from pursuing a judgment and that the creditor could neither obtain a lien nor execute against the homestead without a judgment. In a footnote, he commented that the lien would have been avoided under the *Zeisman* rationale even if the creditor had reduced its debt to judgment prior to the bankruptcy filing.

In *Matter of Mosher,* slip op. No. 86–491–C (Bankr.S.D.Iowa, July 3, 1986), remanded, 79 B.R. 840 (S.D.Iowa 1987), Bankruptcy Judge Richard Stageman held that the Iowa Homestead Exemption law frustrated the lien avoidance provisions of the Bankruptcy Code and, accordingly, was rendered invalid under the Supremacy Clause of the United States Constitution. Thus, although Judge Stageman found that the homestead could not be exempted under state law as to the creditor's judgment lien on an antecedent debt, he overruled the creditor's objection to the homestead exemption and allowed the debtors to avoid the creditor's lien. Judge Stageman opined that Congress did not intend to allow state exemption laws to undermine a debtor's ability to avoid liens and that the language of 11 U.S.C. section 522(f) evidenced such intent. He suggested that Congress would have stated that a lien could be avoided to the extent it impaired an exemption to which the debtor "is entitled" (rather than "would have been entitled") under section 522(b) if they had intended to permit state exemption laws to restrict lien avoidance.

In the case of *In re Ellingson,* 82 B.R. 88 (N.D.Iowa 1986), U.S. District Court Judge David R. Hansen reversed the bankruptcy court's order which had overruled an objection to the homestead exemption by a creditor holding an unsecured antecedent claim. Judge Hansen emphasized that Iowa law did not require one that was a creditor prior to a debtor's acquisition of a homestead to reduce the debt to judgment before the commencement of the bankruptcy action in order to proceed against the homestead. Moreover, he found that the *Zeisman* analysis improperly construed 11 U.S.C. section 522(f)(1). Accordingly, Judge Hansen ruled that the debtors could not claim their homestead exempt as to the antecedent debt and therefore they could not avoid any lien the creditor might obtain in state court by operation of the Bankruptcy Code's lien avoidance provisions. Lastly, Judge Han-

sen observed that the creditor did not have any advantage over the other general creditors by operation of the homestead exemption exception. The antecedent claimholder did not have a lien by operation of Iowa Code section 561.21. He declined to determine whether the automatic stay should be lifted to allow the creditor to attempt to reduce the claim to judgment and obtain a lien pursuant to state law and whether the creditor could maintain such an action in state court.

In *In re Mosher,* 79 B.R. 840 (S.D.Iowa 1987), U.S. District Court Judge Donald E. O'Brien noted the split of authority with respect to the relationship between 11 U.S. C. section 522 and state exemption laws. He then decided not to determine that issue upon finding that there was a possibility the debtors were entitled to the homestead exemption despite the contrary finding by the bankruptcy court. Judge O'Brien pointed out that Iowa Code section 561.21 provided for the sale of the homestead to satisfy a deficiency remaining after a debtor's other property subject to execution was exhausted. Accordingly, he remanded the case to the bankruptcy court to determine whether the creditor had exhausted the debtors' other property.[2]

■ After duly considering the relevant statutory provisions and general caselaw, this court respectfully disagrees with the decisions of the bankruptcy courts in *Zeisman, McCormick* and *Mosher* and respectfully declines to attempt a preliminary defi-

ciency determination, as the district court directed under the particular facts and prior disposition by Judge Stageman in the *Mosher* case. Basically, this court agrees with the *Ellingson* opinion which incorporates the *McManus* reasoning.

The section 561.21(1) exception to the Iowa exemption law is clear on its face. Whether the creditor holding an antecedent claim has reduced the claim to judgment or not has no impact on the statutory scheme. The provision speaks in terms of "debts ... contracted prior to [the homestead's] acquisition" and not in terms of "judicial liens". Indeed, what can be claimed exempt and to what extent are the first questions that must be answered.

Whereas the state exemption laws set dollar limitations on a number of personal exemptions,[3] the Iowa legislature did not restrict the homestead exemption in monetary terms but made it subject to special circumstances. Iowa Code section 561.16. The debtors in this case may claim their homestead exempt to the extent it is not necessary to satisfy a deficiency with respect to Clapsaddle's claim upon liquidation of other property subject to execution.[4] They cannot claim it exempt to the degree a deficiency does exist. Applying the reasoning used in *McManus* and *Ellingson,* this court determines that the debtors may not exercise lien avoidance to the extent there is an antecedent debt which may not be satisfied by exhausting other property subject to execution.[5]

---

**2.** The parties settled the case, without further hearing, upon remand.

**3.** For example, Iowa Code section 627.6(9) permits a debtor to claim a personal motor vehicle exempt only to the extent of $5,000.00 and then only in the aggregate with musical instruments and $1,000.00 in accrued wages and tax refunds. Section 627.6(11) permits a farm debtor to claim implements and equipment exempt only to the extent of $10,000.00 and then only in the aggregate if livestock and feed are also claimed as exempt property. That is, regardless of any lien against such property or of the debtor's ability to avoid the lien, the state has established the limits of the exemptions.

**4.** In a Chapter 7 case, the trustee typically abandons property that is of inconsequential value or that is cumbersome to the estate. 11 U.S.C. section 554. Likewise, exempt property is no

longer property of the estate once the time for objecting to exemptions has passed and insofar as no objection is made or, if made, is overruled. 11 U.S.C. section 541; 11 U.S.C. section 522 and Bankruptcy Rule 4003. The trustee then liquidates the remaining assets and distributes the proceeds to the general unsecured creditors after certain other expenses and priority claims are paid. 11 U.S.C. section 726. (In the event a creditor had a lien upon a liquidated asset, that creditor's lien would be satisfied before the unsecured creditors received any distribution from the proceeds of the sale of that collateral.)

**5.** Obviously, the same result would be reached in the case of an antecedent debt that has been reduced to judgment prior to the commencement of a bankruptcy proceeding. The ramifications of the bankruptcy filing for an unse-

State statutory schemes designed to respond to the particular economic climate of the state and to complement the overall general welfare of the state populace must be acknowledged where appropriate— where the state legislature has determined that the federal exemptions are not as well suited to the needs of its people as are the state fashioned exemptions. That appears to have been Congress' intent in including the "opt out" provision in the final version of 11 U.S.C. section 522. If the fresh start policy of the Code has been frustrated, Congress must respond.

Indeed, under Iowa law, a debtor's homestead may contain one or more contiguous lots or tracts (one-half acre within a city plat; forty acres in the aggregate outside a city plat) with one dwelling house plus appropriate appurtenances. In many cases, the value of the exemption is significant. Iowa Code sections 561.1, 561.2 and 561.3. By contrast, federal law provides that a debtor's exempt aggregate interest in real or personal property used as a residence by the debtor or a dependent, in a cooperative that owns such property or in a burial plot for the debtor or a dependent cannot exceed $7,500. 11 U.S.C. section 522(d)(1).

The debtors in this case may exempt the entire homestead, shown on Schedule B as having a value of only $8,000.00, except to the extent a deficiency remains on the $12,000.00 note to Clapsaddle after other property subject to liquidation is exhausted. As stated earlier, the debtors may not claim an exemption to the extent a deficiency exists and according may not avail themselves of lien avoidance under 11 U.S.C. section 522(f)(1). Thus, whether an antecedent claimholder has reduced the debt to judgment is not important with respect to the exemption and lien avoidance determinations. However, the similar treatment ends there.

Had Clapsaddle reduced the antecedent debt to judgment before the bankruptcy

was filed, his right to seek a judicial sale in state court to the extent any deficiency exists would have survived discharge. *See Zeisman,* No. 83–03017, slip op. at 11 (Bankr.N.D.Iowa 1985). Since the extent of a judicial lien depends upon the exhaustion of other property liable to execution, Clapsaddle would have shared pro rata in any distribution to unsecured general creditors.[6]

In addition to expressing concern over protecting the "fresh start policy" of the lien avoidance provisions of the Code, some of the courts that invoke their equitable powers in voiding the attachment of judicial liens on what they otherwise determine to be non-exempt property do so, in part, lest "lazy" creditors prevail. This court questions whether creditors holding antecedent debts should be encouraged to do any more than obtain a judgment. Likewise, the undersigned doubts that every creditor whose lien survives the bankruptcy process will rush to the state court to obtain a judicial sale of the homestead. The balance or tension between Iowa's antecedent debt limitation on its homestead exemption and the fresh start policy of 11 U.S.C. section 522 must be accepted and allowed to play itself out in those cases in which the antecedent claimholder obtained a judgment before the bankruptcy was commenced. Congress or the state legislature, not the court, can best realign the competing interests if that proves necessary.

Clapsaddle, however, did not reduce the antecedent debt to judgment before the bankruptcy was filed. Unless the automatic stay is lifted to permit him to obtain a judgment, the discharge will forever bar Clapsaddle from obtaining a judicial sale of the homestead. He will, of course, share pro rata in any distribution to unsecured creditors.

In *In re Ellingson,* Case No. C86–60 slip op. at 11–12 (N.D.Iowa Sept. 30, 1986), Judge Hansen observed that:

curred antecedent debt will be distinguished below from the effect of the filing upon an antecedent debt that has been reduced to judgment.

**6.** Typically, a Chapter 7 trustee will disallow a secured claim unless the creditor establishes a

deficiency exists after it realizes its collateral. The statutory scheme pertaining to the antecedent debt exception to the homestead exemption within a bankruptcy context seemingly prevents the claimholder from doing so.

**578**

[i]n determining whether a creditor has shown cause for lifting the automatic stay and under what conditions and to what extent it should be lifted (if at all), the bankruptcy court undoubtedly will consider the strong policies of the Bankruptcy Code to treat like creditors alike and to grant the debtor a new start, and the equities of the events surrounding the securing of the loan.

■ As a general rule and absent blatant abuse of the statutory framework, this court will not grant relief from the stay to an antecedent claimholder for the purpose of reducing the debt to judgment.[7] Typically, the rights of the parties are fixed as of the time the bankruptcy petition is filed and the order for relief is entered. To allow one unsecured creditor to enhance its post discharge position over that of the other unsecured creditors would be inequitable and contrary to Congressional intent. For example, various Code sections allow a trustee to exercise certain powers for the benefit of the estate, not for the benefit of a particular creditor. 11 U.S.C. sections 542, *et seq.* Additionally, entry of the discharge would be delayed to allow the antecedent claimholder time to obtain a judgment;[8] yet, only the debtor may seek a deferral of the entry of the order granting a discharge. Bankruptcy Rule 4004(c).[9]

■ In this case, the motion for relief from stay and the resistance were continued pending a disposition on the exemption and lien avoidance issues. However, given the above analysis and the facts presented previously, the court finds denial of Clapsaddle's motion for relief from stay proper at this time. If the creditor can present facts that would establish "cause" for relief from the stay—a blatant abuse of the statutory framework, he may move for reconsideration of the ruling on the motion for relief from stay on or before March 31, 1988.[10]

## CONCLUSION AND ORDER

WHEREFORE, based on the foregoing analysis, it is hereby found that the debtors may not exempt their homestead to the extent it is subject to the antecedent claim of C.S. Clapsaddle. Accordingly, lien avoidance is not available as to any non-exempt portion of the homestead.

FURTHERMORE, it is found that cause does not exist to grant C.S. Clapsaddle relief from the stay to reduce the antecedent claim to judgment.

THEREFORE, the objection to exemption is sustained, the motion to avoid lien is denied but the motion for relief from stay is denied. The creditor may move for reconsideration of the latter ruling on or before March 31, 1988 if facts not previously presented and reasonably supporting a finding of "cause" exist.

7. Given the unsecured nature of the debt and the initial need to reduce it to a judgment and to determine a deficiency before seeking a judicial sale, the claimholder would be forced to seek relief under the generic "cause" provision of 11 U.S.C. section 362(a)(1).

8. On April 28, 1987 Clapsaddle filed a motion to stay entry of discharge as to debt incurred prior to debtors' acquisition of homestead. The debtors resisted the motion on April 30, 1987. Neither the creditor nor the debtors cite any Bankruptcy Code section or Rule.

9. Bankruptcy Rule 4004(c) provides in part that the court shall grant a discharge in a Chapter 7 case upon the expiration of the time fixed for objecting to discharge unless a complaint objecting to discharge is filed. Pursuant to Bankruptcy Rule 4004(a) the complaint must be filed not later than 60 days following the first date set for the first meeting of creditors. In this case the deadline was April 13, 1987. Clapsaddle filed an objection to discharge, without any reference to 11 U.S.C. section 727, on April 13, 1987. He dismissed the action "without prejudice" on April 16, 1987 but had failed to obtain any extension of time to file such a complaint pursuant to Bankruptcy Rule 4004(b). Parenthetically, the court notes that a general discharge may be entered but the dischargeability of a particular debt held in abeyance if a complaint to determine dischargeability is filed pursuant to 11 U.S.C. section 523. See also Bankruptcy Rule 4007. Clapsaddle has not filed a section 523 complaint.

10. Due to the unusual factual and procedural circumstances in this case, the court will utilize 11 U.S.C. section 105(a) and further delay the entry of discharge until this order becomes final.