In re Alice PILKINGTON, Debtor.

C. Michael STILSON, Trustee, Plaintiff,

v.

GULF STATES PAPER CORP., Defendant.

No. CV 87–Y–0529–W.
Bankruptcy No. 86–4589.
Adv. No. 86–0581.

United States District Court,
N.D. Alabama, S.D.

June 12, 1987.

**912**

C. Michael Stilson, Tuscaloosa, Ala., trustee.

Edwina E. Miller, Tuscaloosa, Ala., for debtor.

Elizabeth Shaw, Tuscaloosa, Ala., for defendant.

## OPINION

POINTER, Chief Judge.

By a Complaint for Turnover of Property, the Trustee in Bankruptcy sought to include as property of the bankrupt estate the debtor's interest in a thrift plan established by her employer, Gulf States Paper Corporation, subject to the provisions of 29 U.S.C. §§ 1001 *et seq.* (ERISA). Gulf States moved to dismiss the Complaint, contending under 11 U.S.C. § 541(c)(2) that the debtor's interest was subject to a spendthrift provision "enforceable under applicable nonbankruptcy law." The controversy was submitted to the Bankruptcy Court for a decision on agreed facts, consisting primarily of the instruments documenting the thrift plan and a trust established to implement the plan. The Bankruptcy Judge made certain findings and conclusions, but then recommended to this court that the legal question as to the validity of the spendthrift provisions of the plan be certified to the Alabama Supreme Court under Ala.R.App.P. 18.[1]

At the outset, the status and role of the district court in these circumstances should be clarified. On this point the parties agree: namely, the order of the Bankruptcy Court is not a final order but should be treated as a suggestion that the district court withdraw this particular adversary proceeding from the general reference to the bankruptcy court. Accepting that recommendation, this court will withdraw the reference of the controversy so that it may take appropriate action on the turnover request, including possible certification under Ala.R.App.P. 18.

---

**1.** The Bankruptcy Judge concluded that the law of Alabama, rather than New York, governed the validity of the spendthrift provisions.

## I. Bankruptcy Law.

The bankruptcy estate is "comprised of ... all legal or equitable interests of the debtor." 11 U.S.C. § 541(a)(1). In general, this includes property interests "notwithstanding any provision ... that restricts or conditions transfer of such interest by the debtor." 11 U.S.C. § 541(c)(1). Section 541(c)(2), however, states the following exception to the sweep of this latter provision: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

In this circuit, as in others, the phrase "applicable nonbankruptcy law" has been held to refer only to state spendthrift trust law. "ERISA-qualifying pension plans containing anti-alienation provisions are excluded pursuant to section 541(c)(2) only if they are enforceable under state law as spendthrift trusts." *In re Lichstrahl,* 750 F.2d 1488, 1490 (11th Cir.1985). The controlling issue, then, is whether the anti-alienation provisions that apply to the debtor's interest in the thrift plan are enforceable under state law. This issue is complicated in the present case because such provisions are contained both in the Plan—which is to be interpreted according to Alabama law—and in the implementing Trust—which is to be interpreted according to New York law.

## II. The Facts.

Participation in the Plan, established or "sponsored" by Gulf States for its salaried employees, is voluntary. Such employees are permitted—not required—to make contributions to the Plan, which Gulf States then partially matches. Assets of the Plan are held in trust by Manufacturers Hanover Trust Company under the terms of a trust agreement between Gulf States and the bank. Contributions and investment earnings are credited to individual accounts established for each participating employee. These accounts are fully vested.[2] The accounts must be distributed within 60 days after a participant's termination of employment or reaching age 65, whichever earlier occurs. Prior to this required distribution, participants may obtain funds from the Plan either by borrowing "against" a portion of their accounts or—with permission of the Plan Committee—by actual withdrawal of a portion of their accounts.[3] Participant can designate the persons who are to receive the undistributed portion of their accounts in the event of death.

Alice Pilkington, the debtor here, is a salaried employee of Gulf States and has been a participant in the Plan. Counting her contributions, those made by Gulf States, and investment earnings, her various accounts totalled $12,103.79 as of the date she filed her Chapter 7 petition in the Bankruptcy Court. She had previously borrowed against her accounts; the loan balance on the date of filing was $4,388.31.[4] She has claimed as exempt her unencumbered funds in the Plan, which amount to approximately $7,700.

The Plan provides in pertinent part—it is 72 pages long—the following:

12.2. *Construction.*

\* \* \* This Plan shall be construed in accordance with the laws of the State of Alabama to the extent that such laws are not preempted by Federal law.

12.3. *Spendthrift Clause.*

To the extent permitted by law, no Individual Account, benefit, payment or distribution under this Plan shall be subject to the claim of any creditor of a

---

2. There are six separate types of contributions under the Plan. Five of those are fully vested at the time of contribution. The sixth—"Company After-Tax Matching Account"—vests over a period of years, becoming fully vested once the participant completes five years of continuous employment with Gulf States or, while employed, dies or reaches age 65. All of the accounts of Alice Pilkington, the debtor in this case, were fully vested.

3. In the event of "immediate and heavy financial hardship" the Plan Committee may authorize withdrawal of the full amount of a participant's accounts in excess of any outstanding loan. Plan § 7.6.

4. According to Gulf States, Pilkington was eligible to have borrowed an additional $5,611 from the fund as of the date the petition was filed. (Brief, p. 4.)

Participant or Beneficiary, or to any legal process by any creditor of such person and no Participant or Beneficiary shall have any right to alienate, commute, anticipate or assign all or any portion of his Individual Account, benefit, payment or distribution under this Plan except to the extent expressly provided herein. If any such person shall attempt to dispose of his Individual Account, or to dispose of the benefits provided for him hereunder, or his right to receive such benefits, or in the event there should be an effort to seize such Individual Account, or the right to receive such Individual Account or the benefits therefrom by attachment, execution or other legal or equitable process, such right may pass and be transferred, at the discretion of the Committee, to such other person or persons as may be selected by the Committee from among those persons, if any, theretofore designated by the Participant as his Beneficiary, or from among his spouse, children or other descendants in such shares as the Committee may appoint. Any appointments so made by the Committee may be revoked by it at any time, and further appointments made by it may include the Participant.

The Trust Agreement provides as follows:

> *THIRTEENTH: Prohibition of Assignment of Interest.* No interest, right or claim in or to any part of the Fund or any payment therefrom shall be assignable, transferable or subject to sale, mortgage, pledge, hypothecation, commutation, anticipation, garnishment, attachment, execution or levy of any kind, and the Trustee shall not recognize any attempt to assign, transfer, sell, mortgage, pledge, hypothecate, commute or anticipate the same, except to the extent required by law.

> \*   \*   \*   \*   \*   \*

> *FIFTEENTH: Miscellaneous.* (a) This Agreement shall be interpreted, construed and enforced, and the trust hereby created shall be administered, in accordance with the laws of the United States and of the State of New York.

## III. Applicable State Law.

■ The Bankruptcy Judge correctly concluded that selection of the controlling law is determined by reference to the terms of the Plan, rather than those of the Trust. The provisions of the Plan establish the rights and obligations of participating employees, such as the debtor. The trust is, in essence, but an investment medium to carry out the terms of the Plan—described as "a part" of the Plan both in the Plan (Section 1.46) and in the Trust Agreement (Section TWO). Under Section THREE of the Trust Agreement, the trustee is absolved of any responsibility to determine the rights of the participants but rather is directed to make payments in such amounts and to such persons as instructed by Gulf States. The NINTH Section of the Trust Agreement provides as follows: "The Plan shall be administered in accordance with its terms, and the Trustee shall not be responsible in any respect for administering the Plan."

With respect to the nature, extent, and restrictions on the interests of the participants, the terms of the Plan are controlling. Accordingly, the laws of Alabama, rather than those of New York, govern the question of whether the anti-alienation provisions are enforceable.[5]

## IV. Alabama Spendthrift Law.

■ Since early days of statehood, Alabama has followed the English common law by severely limiting the efficacy of spendthrift clauses. The few cases in which creditors were unsuccessful in reaching property interests owned by a debtor were based not on restrictive clauses against alienability, attachment, or execution, but rather on the contingent or joint nature of the debtor's interest in the property. *See, e.g., Rugely & Harrison v. Rob-*

---

**5.** The Plan's argument for enforceability of the spendthrift clause is far stronger under New York law, though not by any means clear. *Fordyce v. Fordyce,* 80 Misc.2d 909, 365 N.Y.S.2d 323 (S.Ct.1974), suggests that the entirety of the debtor's interest in her accounts would be treated as "self-settled" and outside the protection of N.Y.Civ.Prac.Law § 5205.

*inson,* 10 Ala. 702 (1846), *second opinion after remand,* 19 Ala. 404 (1851). As stated in *Hartwell v. Mobile Towing & Wrecking Co.,* 212 Ala. 313, 314, 102 So. 450, 451 (1924):

> In Alabama, the law subjects all the debtor's property, legal or equitable, other than the homestead and limited exemptions of personalty, to the payment of his debts.   ·
>
> It is a part of our public policy that one shall not enjoy the benefits of the ownership of property without its burdens. Even property coming by gift or devise in trust, so limited that the continued beneficial enjoyment is assured to the cestui que trust, is subject to his debts. Any restriction in the instrument creating the trust, designed to defeat the claims of creditors against such property, is void.

*Hartwell* illustrates the restricted circumstances under which efforts to place properties beyond the reach of creditors have succeeded. The Supreme Court upheld the validity of a condition in a bequest which provided that, upon the effort by any of Hartwell's creditors to subject his interest under the trust to payment of debts, his interest in the trust would terminate and be paid to the testator's niece. Although creditors could not seize the property, they could assure that the debtor obtained no further benefits from the property either.

The interest that Hartwell had in the testamentary trust is markedly different from that of Pilkington in the thrift plan. Efforts by a creditor to subject Pilkington's interest to their claims do not automatically cause her to lose all further interest and benefits under the Plan. Such efforts would merely give the employer (or its Committee) the option of interceding and selecting the persons for whom such shares would be held—from among Pilkington's designated beneficiary, spouse, and descendants—and, indeed, of appointing Pilkington herself as the beneficial owner at a subsequent time. This is not different in substantive effect from the anti-alienability clauses that Alabama courts have consistently rejected.

By statute, Alabama has receded in part from its antipathy towards spendthrift trusts. In 1935 the Legislature enacted the predecessor to what is now Ala.Code § 19–3–1 (1975). As amended, this section authorizes a testamentary or *inter vivos* gift of property in a trust for life, with remainder over to a person selected by the grantor or devisor, and provides that the beneficial interest of the life beneficiary is not subject to seizure for the debts of the life beneficiary. This section only covers trusts that are established and funded by a person who is related by blood or marriage to the life beneficiary. This statute is clearly inapplicable to Pilkington's interest in the thrift plan.

Obviously concerned because of the large number of bankruptcy cases involving interests in employee retirement plans, the Bankruptcy Judge recommended that the question of the enforceability of the spendthrift clause be certified to the Alabama Supreme Court as one on which there were no "clear controlling precedents." Upon consideration, however, this court is convinced that the law of Alabama is clear; namely, that the debtor's interest in this particular thrift plan is such that the anti-alienation clause found in section 12.3 is not enforceable. The court need not determine whether instructions from the Alabama Supreme Court should be sought when questions arise concerning spendthrift clauses in other forms and types of ERISA plans.

This adversary proceeding is therefore to be referred again to the Bankruptcy Court for further proceedings, including such questions as the priority and status of the Plan's claim for repayment of Pilkington's indebtedness to it.

### APPENDIX

In the United States Bankruptcy Court for the Northern District of Alabama Western Division

### MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

This matter came before the Court on the Trustee's COMPLAINT FOR TURN-

OVER OF PROPERTY. The Trustee, through his complaint, sought to include as property of the bankrupt estate the debtor's interest in a qualified Employee Retirement Income Act of 1974 [ERISA] pension plan.

The facts of the case at bar are undisputed and are set out briefly below. Both the Trustee and Gulf States Paper Corporation (hereinafter Gulf States) have agreed to submit this case for decision on the merits. After reviewing the applicable law, the briefs of the parties and the Gulf States' ERISA plan it is the opinion of this Court:

1. That the validity of the ERISA plan as a valid spendthrift trust is governed by Alabama law; and

2. That there exists no controlling precedent in the State of Alabama to guide this Court in determining whether the Gulf States' plan qualifies as a spendthrift trust.

WHEREFORE, it is the recommendation of this Court that the Federal District Court for the Northern District of Alabama certify to the Alabama Supreme Court the following question: Does an ERISA–qualified retirement plan under which both the employer and the employee make contributions qualify as a valid spendthrift trust under Alabama law when the employee is entitled to make "withdrawals" form her account prior to retirement?

In addition to acting as a recommendation to the District Court, this memorandum shall constitute finding of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The Court expressly retains jurisdiction to make further findings of fact and conclusions of law as may be necessary in the event of an appeal.

## FINDINGS OF FACT

Alice Pilkington (hereinafter the debtor) is an employee of Gulf States Paper Corporation. As part of her employee benefit package she is entitled to participate in the Gulf States' ERISA qualified pension plan (hereinafter the plan). Under the plan, employees make contributions which are then partially matched by the company. The plan,[1] which is contained within a seventy-two page document, provides in pertinent part as follows:

12.2 *Construction*

In the construction of his Plan, the masculine shall include the feminine and the singular the plural in all cases where such meanings would be appropriate. This plan shall be construed in accordance with the laws of the State of Alabama to the extent that such laws are not preempted by Federal law (emphasis added).

12.3 *Spendthrift Clause*

To the extent permitted by law, no Individual Account, benefit, payment or distribution under this Plan shall be subject to the claim of any creditor of a Participant or Beneficiary, or to any legal process by any creditor of such person and no Participant or Beneficiary shall have any right to alienate, commute, anticipate or assign all or any portion of his Individual Account, benefit, payment or distribution under this Plan except to the extent expressly provided

---

1. The funds generated by the plan are administered by a trustee, Manufacturers Hanover Trust Company (hereinafter Manufacturers Hanover), pursuant to a trust agreement which was executed in May of 1981. The trust agreement is between Manufacturers Hanover and Gulf States and provides in part:

WHEREAS, the Trustee desires to serve as such under this Agreement but is not a party to the Plan and makes no representations with respect thereto, and all representations and recitals with respect to the plan shall be deemed to be those of the Company; (emphasis added)

*THIRTEENTH: Prohibition of Assignment of Interest.*

No interest, right or claim in or to any part of the Fund or any payment therefrom shall be assignable, transferable or subject to sale, mortgage, pledge, hypothecation, commutation, anticipation, garnishment, attachment, execution or levy of any kind, and the Trustee shall not recognize any attempt to assign, transfer, sell, mortgage, pledge, hypothecate, commute or anticipate the same, except to the extent required by law.

*FIFTEENTH: Miscellaneous.* (a) This Agreement shall be interpreted, construed and enforced, and the trust hereby created shall be administered, in accordance with the laws of the United States and of the State of New York (emphasis added).

herein. If any such person shall attempt to dispose of his Individual Account, or to dispose of the benefits provided for him hereunder, or his right to receive such benefits, or in the event there should be an effort to seize such Individual Account, or the right to receive such Individual Account or the benefits therefrom by attachment, execution or other legal or equitable process, such right may pass and be transferred, at the discretion of the Committee, to such other person or persons as may be selected by the Committee form among those persons, if any, theretofore designated by the Participant as his Beneficiary, or from among his spouse, children or other descendants in such shares as the Committee may appoint. Any appointments so made by the Committee may be revoked by it at any time, and further appointments made by it may include the Participant (emphasis added).

The plan provides for the payment of a participant's account not later than 60 days after the end of the plan year in which the participant (1) reaches age 65 or (2) terminates his employment, whichever occurs later[2]. During her employment under the plan, the debtor is entitled to borrow against her contributions. However, she must first obtain the approval of an independent committee appointed by Gulf States. The debtor's borrowing powers are also limited to certain vested accounts.[3]

As a plan participant, the debtor may obtain a loan, with committee approval, from her After–Tax Matched account[4] or After–Tax Unmatched Contributions.[5] In addition, the Gulf States plan provides that withdrawals may be made (with committee approval) in the event of and immediate and heavy financial hardship.

On June 13, 1986, the debtor filed this Chapter 7 petition. In her petition the debtor listed as a secured debt a loan which had been obtained from the Gulf States' plan. The loan, according the debtor's schedules, was secured by contributions which had been made under the terms of the plan. The debtor also claimed as exempt all remaining unencumbered funds to which she was entitled under the plan. According to the Gulf States' brief (at page 3), the debtor presently has the "right to receive" as much as $8028.27.

## CONCLUSIONS OF LAW

The increase in the number of personal bankruptcies has resulted in an increase in litigation surrounding the exclusion of certain ERISA retirement benefits from the bankrupt estate. Trustees and creditors seeking the inclusion of these benefits have traditionally argued that an individual should not be allowed to shield assets from the reach of his creditors. In addition, it has been argued that 11 U.S.C. Section

2. Thus if an employee worked beyond the age of 65 distributions under the plan would not begin until he terminated his employment.

3. The Gulf States plan provides that contributions may be made on a before-tax or after-tax basis. "Contributions in each category are set up in separate accounts designated: After–Tax Matched, After–Tax Unmatched, Before–Tax Matched, Before–Tax Unmatched, Company Matching Before–Tax and Company Matching After–Tax." See Defendant's Brief at page 2.

4. Distributions from the After–Tax Matched account may only be made to the extent of contributions and may not include earnings on those contributions. In addition, a withdrawal from this account may only be requested once every 24 months.

5. Withdrawals from the After–Tax Unmatched contributions account may be made provided that the amount of such withdrawal shall not exceed the "total After–Tax Unmatched Contributions under the Plan less the sum of his After–Tax Unmatched Contributions made during the current Plan Year and any amount previously withdrawn under this Section 7.5.2. and in no event shall the amount withdrawn exceed the lesser of (1) the balance of his After–Tax Unmatched Account as of the Valuation Date following the date such election is made or (2) the excess, if any, of the value of his vested interest in his Individual Account over the amount, if any, of his Individual Account which is invested in the Loan Fund as of such Valuation Date." (Excerpt from Section 7.5.2. of the Gulf States Paper Corporation Salaried Employees' Thrift Plan as restated Effective as of January 1, 1986). In addition, withdrawals from this account may not exceed two within a 12 month period.

541(a)(1) [6] was intended to bring within the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." [7] Debtor's, on the other hand, have seized on the argument that Congress intended to allow debtors the right to exclude retirement trust benefits by providing in 11 U.S.C. Section 541(c)(2) that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title."

The Eleventh Circuit Court of Appeals in the case of *In re Lichstrahl*, 750 F.2d 1488, 1490 (11th Cir.1985) recently held that the phrase "applicable nonbankruptcy law" in Section 541(c)(2) referred "only to state spendthrift trust law." Thus, according to *Lichstrahl* "ERISA-qualifying pension plans containing anti-alienation provisions are excluded pursuant to Section 541(c)(2) only if they are enforceable under state law as spendthrift trusts." *Lichstrahl*, 750 F.2d at 1490. [8] This Court must therefore decide the following two issues: 1) whether the law of Alabama or the law of

New York is to be applied in the case at bar, and 2) whether the Gulf States' ERISA retirement trust qualifies as a valid spendthrift trust under applicable law.

ISSUE # 1: WHETHER ALABAMA OR NEW YORK LAW APPLIES?

The Trustee and Gulf States both recognize *Lichstrahl* as controlling authority on this Court, however, the parties disagree as to which state's law should be utilized in determining if the Gulf States' ERISA plan is a valid spendthrift trust. Gulf States urges this Court to apply the law of New York, under which a trust similar to Gulf States' was held not to be property of the bankrupt estate. See *In the Matter of Parker*, 473 F.Supp. 746 (W.D.N.Y.1979) (interpreting Section 70(a)(5) of the Bankruptcy Act). Gulf States bases its argument on the Fifteenth item of the Trust Agreement which states that New York law shall govern the agreement. [9] The Trustee, relying on the actual plan, contends that Alabama law should be applied. This Court finds the Trustee's argument to

6. 11 U.S.C. Section 541(a)(1) provides, in pertinent part:

(a) The commencement of a case under ... this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

7. In October of 1979, the new Bankruptcy Code became effective. As part of that code, Congress passed Section 541(a)(1) of Title 11, which substantially broadened the scope of property included within the bankrupt estate. The forerunner of Section 541(a)(1) was Section 70(a)(5) of the Bankruptcy Act which provided:

(a) The trustee of the estate of a Bankrupt ... shall ... be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition [to]

... (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized impounded or sequestered....

Under Section 70(a)(5) all retirement benefits were excluded from claims of the trustee. See *In the Matter of Turpin*, 644 F.2d 472, 474 (5th Cir.1981). Section 541(a)(1) merely excludes retirement trust benefits which qualify under state law as valid spendthrift trusts. See H.R.

Rep. No. 595, 95th Cong., 2d Sess. 176, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6136; S.Rep. No. 989, 95th Cong., 2d Sess. 83, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5869. (expressly limiting Section 541(c)(2) to spendthrift trusts).

8. Numerous federal courts have addressed the question of the excludability of retirement trust benefits under 11 U.S.C. Section 541(c)(2). However, each of these courts was applying the law of the state in which it sat. If a "general rule" can be formulated from these decisions it appears to be that states generally recognize the retirement trusts as valid spendthrift trusts where the debtor has no direct control over the funds of the plan. See *In re Matter of Jones*, 43 B.R. 1002 (N.D.Ind.1984); *In re Crenshaw*, 51 B.R. 554 (N.D.Ala.1985) (construing Illinois law); *In the Matter of Lawson*, 67 B.R. 94 (Bankr.M.D.Fla.1986); *In re Threewitt*, 24 B.R. 927 (D.Kan.1982). Courts have generally included the retirement trust benefits where the debtor maintained significant control over the pension funds. See *In re Daniel*, 771 F.2d 1352 (9th Cir.1985); *In re Graham*, 726 F.2d 1268 (8th Cir.1984); *In the Matter of Goff*, 706 F.2d 574 (5th Cir.1983); *In re White*, 47 B.R. 410 (W.D.Wash.1985).

9. For the text of the Fifteenth item see footnote number 1.

be more persuasive in that the plan is the actual agreement between the *company* and its *employees*, whereas, the trust agreement is between the *company* and the *trustee*. In addition, the debtor is not a party to the trust agreement, and it is the plan, not the trust, agreement which contains the substantive provisions for withdrawals, eligibility and the like. Therefore, this Court makes a finding of fact that Alabama law governs the present controversy.

ISSUE # 2: WHETHER THE GULF STATES ERISA RETIREMENT PLAN QUALIFIES AS A VALID SPENDTHRIFT TRUST UNDER ALABAMA LAW?

English courts took a dim view of spendthrift trusts and generally prohibited such trusts as tending to "encourage weaklings and the improvident to continue to be wasteful...." [10] When the validity of these trusts was first litigated in this country the majority of states declined to follow the English. [11] "Professor John Chipman led the forces which sought to persuade the American courts to follow the lead of the English decisions, and he was successful in a few states," including Alabama. [12] Early Alabama decisions dealt mainly with attempts by testators to impose restrictions on their devises. These cases severely limited spendthrift trusts to those in which a beneficiary's interest was given to him to be enjoyed jointly with others and incapable of severance. *Rugely v. Robinson,* 10 Ala. 702 (1846), *aff'd on rehearing,* 19 Ala. 404 (1851). In *Hartwell v. Mobile Towing & Wrecking Co.,* 212 Ala. 313, 102 So. 450,

451 (1924) the Alabama Supreme Court stated:

> [i]n Alabama, the law subjects all the debtor's property, legal or equitable, other than the homestead and limited exemptions or personalty, to the payment of this debts.

> It is a part of our public policy that one shall not enjoy the benefits of the ownership of property without its burdens. Even property coming by gift or devise in trust, so limited that the continued beneficial enjoyment is assured to the cestui que trust, is subject to his debts. Any restriction in the instrument creating the trust, designed to defeat the claims of creditors against such property is void.

In 1935, Alabama passed what is now Section 19–3–1. [13] Section 19–3–1, as originally passed by the Alabama legislature, allowed for the establishment of a trust for the support and maintenance of the *relatives* of the settlor. The only limits placed on such a trust were 1) the amount of money which could be shielded from the reach of the beneficiary's creditors could not exceed $1,800 per year, and 2) the duration of the trust could not exceed the limit fixed by the rule against perpetuities. In 1982, Alabama amended Section 19–3–1 to remove the $1,800 per year dollar limitation.

Modern statutory law, thus, appears to broaden the area of recognized spendthrift trusts in this state, but nowhere in the Alabama case law or statutory law has this Court been able to find any guidance [14] on

---

**10.** *G. Bogert on Trusts,* Section 40 (1952).

**11.** *Id.*

**12.** *G. Bogert on Trusts,* Section 40 (1952).

**13.** Alabama Code Section 19–3–1 (1975) provides:

It is lawful for any person or owner of property to convey or devise any of his real estate or personal property to another in thrust to receive and pay the profits or income, and, at the grantor's or devisor's election, so much of the principal as may be required, in the trustee's opinion, for the support, maintenance and education of any child, grandchild or other relation by blood or marriage, with remainder as the grantor or

devisor shall provide, during a period of time not exceeding the limit fixed by law as to perpetuities; and the property so conveyed and the income or profits therefrom shall not be liable for or subject to be seized or taken in any manner for the debt of such child, grandchild or other relation, whether the same is contracted or incurred before or after the creation of such trust.

**14.** With the enactment of Section 522 of Title 11, Congress allowed individual states to "opt-out" of the federal bankruptcy exemptions. Alabama, as one of the states which chose to opt-out of Section 522(d), allows bankrupt debtors to claim as exempt, property which was exemptible under state law, as well, as property ex-

the question of whether the trust in the case at bar would be recognized in Alabama as a valid spendthrift trust. The question of the excludability of retirement trust is an extremely important one and one which arises on a daily basis in the bankruptcy courts. During 1986, 15,534 bankruptcy cases were filed in the State of Alabama, many of which involved retirement trust benefits. This Court is aware that it is empowered to make an "Erie educated guess" of how the Alabama Supreme Court would rule if faced with the issues in the case at bar, however, because of the magnitude of the matters involved in this case, it is the recommendation of the Court, that the Alabama Supreme Court be presented with the issue for decision pursuant to Alabama Rule of Appellate Procedure 18.

This memorandum shall constitute finding of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. A separate order will be entered in accordance with the Court's findings.

DONE AND ORDERED this the 30 day of March, 1987.

emptible under federal law other than 11 U.S.C. Section 522(d). As part of its exemption "package", Alabama law currently provides that retirement/pension funds established under Alabama Code Sections 16–25–23 (Teachers Retirement System), 36–21–77 (Benefits and annuities of state and local peace officers) and 36–27–28 (State Employee's Retirement System) are exemptible. Thus, by definition these benefits must first become an asset of the bankrupt estate before they can be claimed as exempt by a debtor.