**In re Paul Kenneth HARLESS, and Loretta Jane Harless, Debtors.**

**Donald L. DIONNE, Trustee, Plaintiff,**

**v.**

**Paul Kenneth HARLESS, and Loretta Jane Harless, Defendants.**

**Bankruptcy No. 94–71994.
Adv. No. 95–70311.**

United States Bankruptcy Court,
N.D. Alabama,
Western Division.

Sept. 25, 1995.

Craig L. Slay, Tuscaloosa, Alabama, for Debtors.

Donald L. Dionne, Tuscaloosa, Alabama, Trustee.

E. Kenneth Aycock, Tuscaloosa, Alabama, for Trustee.

Helen H. Ellis, Tuscaloosa, Alabama, Estate Analyst.

### MEMORANDUM OF DECISION

C. MICHAEL STILSON, Bankruptcy Judge.

This matter came before the court on an adversary proceeding filed by Donald L. Dionne, as Trustee, seeking turnover of funds held by the debtor, Paul Kenneth Harless, in a "rollover" Individual Retirement Account (IRA). The court has reviewed the documents on file, including the parties' Joint Stipulation of Facts, and finds the Trustee's request should be **DENIED,** the debtors having properly claimed the IRA as exempt under *Ala.Code* § 19–3–1(b) (1975 & Supp. 1994).

### FINDINGS OF FACT

On April 28, 1994, Paul K. Harless applied with AmSouth Bank, N.A., to deposit funds in a "rollover" Individual Retirement Account (IRA) established under 26 U.S.C. § 408(a).[1] *See* Exhibit A to Joint Stipulation of Facts, AP Doc. 5. The funds for the IRA were proceeds Harless cashed out of a retirement plan created under 26 U.S.C. § 401(k) by Harless' former business, Mardel Enterprises of Alabama, Inc. The fund was identified as "Individual Retirement Custodial Ac-

---

1. **26 U.S.C. § 408(a) (Supp.1995)** provides:

(a) **Individual retirement account.** For purposes of this section, the term "individual retirement account" means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements:
(1) Except in the case of a rollover contribution described in subsection (d)(3) in section 402(c), 403(a)(4), or 403(b)(8), no contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year in excess of $2,000 on behalf of any individual.
(2) The trustee is a bank (as defined in subsection (n)) or such other person who demon-

strates to the satisfaction of the Secretary that the manner in which such other person will administer the trust will be consistent with the requirements of this section.
(3) No part of the trust funds will be invested in life insurance contracts.
(4) The interest of an individual in the balance in this account is nonforfeitable.
(5) The assets of the trust will not be commingled with other property except in a common trust fund or common investment fund.
(6) Under regulations prescribed by the Secretary, rules similar to the rules of section 401(a)(9) and the incidental death benefit requirements of section 401(a) shall apply to the distribution of the entire interest of an individual for whose benefit the trust is maintained.

count (Under Section 408(a) of the Internal Revenue Code)" in the account's Disclosure Statement. (Exhibit B to AP Doc. 5.)

The Disclosure Statement accompanying Harless' Custodial Agreement with AmSouth (Exhibit B to AP Doc. 5) provided that all or part of an individual's IRA might be awarded to an ex-spouse or spouse in court action.

The Disclosure Statement also said:

**Removal of Contributions.** You may withdraw an IRA contribution by the due date (including extensions) for filing your federal income tax return for the year for which the contribution was made. You must also withdraw the earnings attributable to the excess and include the earnings as income for the year in which the contribution was made.

Further, the agreement describes the tax penalties Harless would suffer if he made withdrawals from the account before he reached age 59½; if he used all or part of the IRA as security for a loan; and if he directly borrowed from the IRA.

Harless' interest in the account was clearly transferrable although transfer would result in adverse tax consequences. No language which would prevent the withdrawal, assignment or transfer of the funds in the IRA appears in either 26 U.S.C. § 408(a), or in Exhibit A or Exhibit B to AP Doc. 5.

October 6, 1994, the Harlesses filed this Chapter 7 bankruptcy case. (BK Doc. 1) On their Schedule C, Property Claimed as Exempt, the Harlesses listed the "IRA Account at AmSouth Bank" totalling $7,961.48 as exempt from the trustee and their creditors under *Ala.Code* § 19–3–1(b). The debtors' attempt to protect this account is the subject of Adversary Proceeding 95–70311.

November 17, 1994, Dionne, as trustee, filed an Objection to Claim of Exemptions (BK Doc. 9) citing in particular $13,625.00 claimed as exempt under *Ala.Code* § 6–10–6 and $1,800.00 claimed under *Ala.Code* § 6–10–6. However, the trustee also "... respectfully requests that this Honorable Court deny the Debtors' claim of exemption in total due to the Debtors' clearly manifested intent to claim exemptions substantially in excess of the statutory maximum."

December 28, 1994, the trustee filed a Motion of Trustee Objecting to Claim of Exemptions and Seeking Turnover of Property of the Estate. (BK Doc. 18) This motion asked turnover of certain items of jewelry (two rings, a pearl necklace and bracelet, and a tennis bracelet and choker) because the trustee said the property was not insured.

March 17, 1995, Dionne filed Adversary Proceeding 95–70311 asking for turnover of the AmSouth IRA and any interest drawn on the account. The trustee's complaint alleged that the account could not be excluded from the bankruptcy estate under *Ala.Code* § 19–3–1(b) because the account could not be viewed as a "spendthrift trust" under Alabama law "nor do the debtors have sufficient room in their exemptions to allow this IRA to be included in their exempt assets."

The Harlesses' pleadings argued two points. They contended first, that the IRA never became property of the bankruptcy estate created by 11 U.S.C. § 541 because of the exclusion granted by Section 541(c)(2). Alternatively, they argued that, if their interest in the account were part of the bankruptcy estate, they could claim the funds as exempt under *Ala.Code* § 19–3–1(b).

April 25, 1995, the Bankruptcy Court approved a consent Order Approving Partial Compromise and Settlement of the issues in the trustees' initial motions in the main bankruptcy file. (BK Doc. 62) The order said the settlement resolved all exemption questions:

with the exception of the exemptability by the Debtors of Individual Retirement Accounts with AmSouth Bank which were valued at $7,961.48 at the time of filing.

After these issues were settled, the parties apparently turned their attention to AP 95–70311. On May 12, 1995, Dionne and the Harlesses filed a Joint Stipulation of Facts. (AP Doc. 5):

On May 18, 1995, Dionne filed a Motion for Summary Judgment (including brief material in support of the trustee's position). (AP Doc. 6). The trustee contended that the IRA could not be excluded from the estate by Section 541(c)(2) of the Bankruptcy Code

because there were no restrictions on transfer in either 25 U.S.C. § 408(a) or in the agreements that created the account. The trustee further argued that the account was property of the estate because it did not meet the state law definition for a "spendthrift trust."

The Harlesses filed a Motion for Summary Judgment (AP Doc. 11) and a Brief in Support of Summary Judgment (AP Doc. 12) on June 22, 1995. They contended that since IRAs are "qualified trust(s)" under Section 19–3–1(b), they are excluded from the bankruptcy estate under Section 541(c)(2); or, if included in the estate, could be validly claimed as exempt by the Harlesses under Section 19–3–1(b).

The court took the case under submission for decision on the parties' motions for summary judgment July 25, 1995.

## CONCLUSIONS OF LAW

### I.

### The Harless IRA is included in property of their Chapter 7 bankruptcy estate.

**A. Congress intended for 11 U.S.C. § 541(a)'s definition of property of the estate to be construed expansively; its exceptions, as under Section 541(c)(2), more narrowly.**

1. *Section 541(a) brings "all legal and equitable interests of the debtor in property" "wherever located and by whomever held" as of the petition date into the bankruptcy estate.*

It has now become a cliché to quote the famous definition of the legal entity known as the "bankruptcy estate" created by 11 U.S.C. § 541(a).[2] The bankruptcy estate comprises "all legal or equitable interests of the debtor in property" "wherever located and by whomever held" on the day the debtor files his/her bankruptcy petition.

**2. 11 U.S.C. § 541(a)(1)** provides:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. *Such estate is comprised of all the following property, wherever located and by whomever held:*
  (1) Except as provided in subsections (b) and (c)(2) of this section, *all legal or equita-*

The House and Senate reports accompanying the Bankruptcy Reform Act of 1978 make it clear that Congress intended a broad, and expansive definition of property interests included in the estate.[3] The Supreme Court of the United States reiterated that construction in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In that case, the courts forced the Internal Revenue Service to turn over property it had seized under a tax lien to a Chapter 11 debtor-in-possession. The IRS' seizure of the debtor's business premises precipitated the Chapter 11. To reach its holding, the Supreme Court determined the debtor-in-possession's property was property of the bankruptcy estate despite the IRS' prepetition levy on its lien "collateral."

While the *Whiting Pools* case dealt with a Chapter 11 reorganization, its policy language on the scope of the bankruptcy estate is applicable in any bankruptcy chapter:

The statutory language reflects this view of the scope of the estate. As noted above, § 541(a)(1) provides that the "estate is comprised of all the following property, wherever located: ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 USC § 541(a)(1) (1976 ed, Supp V) The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad.

*Whiting Pools*, 462 U.S. at 204–205, 103 S.Ct. at 2313.

The court further defined the property interests included in the estate at 462 U.S. at 204, n. 8, 103 S.Ct. at 2313; n. 8:

Similar (congressional) statements to the effect that § 541(a)(1) does not expand the rights of the debtor in the hands of the estate were made in the context of describing the principle that *the estate succeeds to*

*ble interests of the debtor in property as of the commencement of the case....* (emphasis added)

**3.** H.R.Rep. No. 595, 95th Cong., 1st Sess., 367–368 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82–83 (1978).

*no more or greater causes of action against third parties than those held by the debtor . . .* (emphasis added)

So the legal entity known as the bankruptcy estate succeeds to the same ownership interest held by the debtor when the petition is filed—unless the interest comes under an exception to Section 541(a)(1).

2. *Section 541(c)(2) provides that an "enforceable" restriction on transfer of a debtor's interest in a trust or account will exclude it from the bankruptcy estate.*

The Harlesses contend Section 541(c)(2)[4] should exclude the IRA from their Chapter 7 bankruptcy estate. The section states that when nonbankruptcy law provides an enforceable restriction on the debtor's transfer of his/her interest in property, that restriction will be enforced against the operation of Section 541(a)(1) as well. The restricted property will never enter the bankruptcy estate at all.

Before the impact of the Employee Retirement Income Security Act (ERISA) of 1974 was felt nationwide, the courts had limited the application of Section 541(c)(2) to traditional "spendthrift trusts," enforceable under state law. In Alabama, that meant a narrow construction since the "spendthrift trust" authorized in former *Ala.Code* § 19–3–1[5] (since 1990, *Ala.Code* § 19–3–1(a)) limited potential beneficiaries to the grantor's relatives by blood or marriage. The principal of this statutory trust was unreachable by the beneficiaries, the beneficiaries' creditors *and,* because of the restriction, the beneficiaries' bankruptcy estate and trustee. *See Stilson v. Gulf States Paper Corp. (In re Pilkington),* 89 B.R. 911 (N.D.Ala.1987).

■ Since the beneficiary's/beneficiaries' creditors cannot reach the corpus of a "spendthrift trust" under what is now *Ala. Code* § 19–3–1(a), such trusts clearly comply with the Bankruptcy Code's Section 541(c)(2) substantive requirement for a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law."

Trust funds established and enforceable under *Ala.Code* § 19–3–1(a) are outside the bankruptcy estate, as untouchable for the bankruptcy trustee as they are for the debtor/debtor's creditors in a nonbankruptcy setting.

Individual bankruptcy filings increased greatly during the 1980s, more and more trustees sought to reach retirement assets, including plans set up under ERISA (29 U.S.C. § 1001 et seq.) and applicable Internal Revenue Code (Title 26, U.S.C.) sections.

This eventually resulted in a split among the circuit courts of appeal on whether the anti-alienation clause required for ERISA-qualified plans (29 U.S.C. § 1056(d)(1))[6] was

4. **11 U.S.C. § 541(c)(2)** provides:

A restriction on the transfer of a beneficial interest of the debtor in a trust *that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.* (emphasis added)

5. Pre–1990 *Ala.Code* § 19–3–1 (now Section 19–3–1(a)). It provided (and still provides):

It is lawful for *any person or owner of property to convey or devise any of his real estate or personal property to another in trust* to receive and pay the profits or income, and, at the grantor's or devisor's election, so much of the principal as may be required, in the trustee's opinion, *for the support, maintenance and education of any child, grandchild or other relation by blood or marriage,* with remainder as the grantor or devisor shall provide, during a period of time not exceeding the limit fixed by the law as to perpetuities; and *the property so conveyed and the income or profits therefrom shall not be liable for or subject to be seized or* taken in any manner for the debt of such child, grandchild or other relation, whether the same is contracted or incurred before or after the creation of such trust. (emphasis added)

6. **29 U.S.C. § 1056(d)(1)** provides simply:

**(d) Assignment or alienation of plan benefits.** (1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

Further, the corresponding section of the Internal Revenue Code, **26 U.S.C. § 401(a)(13)(A)** states:

**(a) Requirements for qualification.** A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

**(13) Assignment and alienation.** (A) In general. A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits pro-

"applicable nonbankruptcy law" for purposes of 11 U.S.C. § 541(c)(2).[7]

Fears were expressed among those who represented companies with ERISA-qualified plans (like Gulf States Paper Corp. in the *Pilkington* case), that if a bankruptcy trustee could reach or "alienate" portions of the pension fund, the whole fund would lose its favored tax treatment. In 1990, the Alabama Legislature adopted *Ala.Code* § 19–3–1(b).

Then the Supreme Court of the United States in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) resolved that conflict. It held that "ERISA-qualified" plans were excluded from the bankruptcy estate under Section 541(c)(2) because the anti-alienation clause required for ERISA qualification constituted the required "applicable nonbankruptcy law." The ERISA anti-alienation clause satisfied the substantive 541(c)(2) requirement for an actual restriction on transfer, the court held, just as did state "spendthrift trust" laws.

The court, in a unanimous opinion written by Justice Blackmun, (with Justice Scalia filing a concurring opinion), found the statutory language clear:

The text of § 541(c)(2) does not support petitioner's (the trustee's) contention that "applicable nonbankruptcy law" is limited to state law. Plainly read, the provision encompasses any relevant nonbankruptcy law, including federal law such as ERISA. *We must enforce the statute according to its terms.* See *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). (emphasis added)

*Patterson,* 504 U.S. at 759, 112 S.Ct. at 2247.

*Ala.Code* § 19–3–1(b), however, includes both "ERISA-qualified" plans *and* other tax-preferred retirement assets which are not "ERISA-qualified" and for which the Internal Revenue Code requires no transfer restriction. IRAs are covered. The section appears to attempt to protect such entities from the bankruptcy estate by adding language to the state law *saying* they are excluded from the bankruptcy estate under Section 541(c)(2). The 1990 addition stated it was to be construed as a "state spendthrift trust law." [8]

The Supreme Court in *Patterson v. Shumate* states the rule on whether IRAs are excluded from the bankruptcy estate at its formation by Section 541(c)(2):

So, too, pension plans that qualify for preferential tax treatment under 26 U.S.C. § 408 (individual retirement accounts) are specifically excepted from ERISA's anti-alienation requirement. See 29 U.S.C. § 1051(6). *Although a debtor's interest in these plans could not be excluded under § 541(c)(2) because the plans lack transfer restrictions enforceable under "applicable nonbankruptcy law," that interest nevertheless could be exempted under § 522(d)(10)(E) (the federal Bankruptcy Code exemption for IRAs and other retirement plan income.)* (emphasis added)

*Patterson,* 504 U.S. at 762–63, 112 S.Ct. at 2249.

---

vided under the plan may not be assigned or alienated.

7. The circuits which had ruled on the issue by 1992 were split five-to-five. The Eleventh Circuit in *Lichstrahl v. Bankers Trust (In re Lichstrahl )*, 750 F.2d 1488 (11th Cir.1985) had held the ERISA anti-alienation clause did not constitute "applicable nonbankruptcy law" under Section 541(c)(2), that the phrase referred "only to state spendthrift trust law." *See also Stilson v. Gulf States Paper Corp. (In re Pilkington )*, 89 B.R. 911 (N.D.Ala.1987) for the result of this mandate.

8. *Ala.Code* § 19–3–1(b)(4) provides:
    INTERPRETATION—The provisions of this section shall be interpreted so as to provide restrictions on alienation and assignment to the extent, and only to the extent, the same are required for a trust within the definition of "qualified trust" *herein* to be a "qualified trust" under the applicable provisions of the Code (the Internal Revenue Code), notwithstanding any attempted assignment or alienation in violation of section 401(a) *or other applicable provisions of the Code. It is intended that this section will constitute "a restriction of the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law" for purposes of section 541(c)(2) of the federal bankruptcy Code, 11 U.S.C. § 541(c)(2), as from time to time amended. This section shall further be construed as a "state spendthrift trust law."* It is further intended for this section to provide an exemption

**B.** **Neither the federal statute nor the individual agreement signed by Harless restricts the debtor's right to transfer his beneficial interest in the IRA—although he will suffer adverse tax consequences if he does so. In this instance, state law cannot, by words alone, create a substantive restriction on IRAs that Congress and the parties did not choose to place there.**

1. *For 11 U.S.C. § 541(c)(2) to exempt property from the bankruptcy estate, transfer of the debtor's beneficial interest must actually be restricted. Language in Ala.Code § 19–3–1(b) which purports, per se, to exempt IRAs from the bankruptcy estate under 11 U.S.C. § 541(c)(2) is not effective.*

▮▮▮ When the Alabama Legislature amended former Section 19–3–1 in 1990, it made the former statute, Section (a) of the new law. The caption referred to Section (a) as **"Express trust for support, maintenance and education of a relative; ...").** The amendment added a Section (b) titled **"... qualified trust under Internal Revenue Code; definitions."** in the caption.

The term "qualified trust under Internal Revenue Code," for purposes of *Ala.Code* § 19–3–1(b) includes Individual Retirement

Accounts under 26 U.S.C. § 7701(a)(37) and 26 U.S.C. § 408. As pointed out in *Patterson*, federal law does not require anti-alienation clauses for IRAs.[9]

Section 19–3–1(b)(1), however, states that benefits in "qualified trusts" "may not be assigned or alienated, voluntarily or involuntarily...." So the section conflicts with the uniform federal scheme for IRAs established by 26 U.S.C. § 408(a). IRAs, generally, are transferrable by virtue of federal law.

Section 19–3–1(b)(4) also conflicts with the *substantive* requirement for restriction on transfer required under Bankruptcy Code Section 541(c)(2). This state statute attempted to exclude transferrable entities such as IRAs from the bankruptcy estate by language alone:

INTERPRETATION.—*It is intended that this section will constitute "a restriction of the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law" for purposes of section 541(c)(2) of the federal bankruptcy Code, 11 U.S.C. 541(c)(2), as from time to time amended. This section shall further be construed as a "state spendthrift trust law."* ... (emphasis added)

State law "spendthrift trusts" are not excluded from the bankruptcy estate because state legislatures have labelled them "spend-

---

from creditors' claims within 11 U.S.C. § 522. (emphasis added)

9. *Ala.Code* § 19–3–1(b)(5)(d) defines "qualified trust" for purposes of Section 19–3–1(b) in the following way:
(d) "Qualified trust" means a "qualified trust" as such term is used in section 401(a) of the Code, *and includes any trust that would not be qualified but for this section.* A "qualified trust" includes, without limitations, any trust that has received a favorable determination letter from the Internal Revenue Service of the United States Department of the Treasury to the effect that such trust is, or will be upon the satisfaction of certain administrative conditions, a "qualified trust" under section 401(a) of the Code. *"Qualified trust" also includes:*
1. A "retirement annuity" described in section 404(a)(2) of the Code, including a retirement annuity that would not satisfy the requirements of section 404(a)(2) of the Code but for this section;
2. An annuity described in section 403(b) if the Code, including an annuity that would not satisfy the requirements of section 403(b) of the Code but for this section;

3. An individual retirement plan described in section 7701(a)(37) of the Code, including an individual retirement plan that would not satisfy the requirements of section 7701(a)(37) of the Code but for this section;
4. A retirement bond described in section 409 of the Code, as in effect prior to January 1, 1984, including a retirement bond that would not satisfy the requirements of section 409 but for this section;
5. A governmental plan described in section 414(d) of the Code;
6. A church plan described in section 414(e) of the Code; and
7. A tax credit employee stock ownership plan described in section 409 of the Code, including a tax credit employee stock ownership plan that would not satisfy the requirements of section 409 of the Code but for this section. (emphasis added)
**26 U.S.C. § 7701(37)(A)** provides:
**Individual retirement plan.** The term "individual retirement plan" means—
(A) an individual retirement account described in section 408(a) (of the Internal Revenue Code), ...

thrift trusts", but because transfer of the benefits *is actually* and *substantively restricted,* as required by 11 U.S.C. § 541(c)(2). If the debtor's interest is not *actually* restricted, it does not matter what the Legislature calls such funds. They cannot be excluded from the bankruptcy estate under Section 541(c)(2) by state law words alone.

To the extent that *Ala.Code* 19–3–1(b) is in actual conflict with controlling federal statutes, it is inoperative to exclude IRAs from the bankruptcy estate under 11 U.S.C. § 541(c)(2). *See Louisiana Public Service Commission v. Federal Communications Commission,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986).[10]

> 2. *Neither federal law nor the Harless' agreement under 26 U.S.C. § 408 contains a restriction on the debtor's transfer of a beneficial interest in the IRA, other than tax consequences. The Harless IRA is not excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2).*

■ Neither federal law nor Harless' Individual Retirement Account and Disclosure Statement Agreement with AmSouth Bank limit the transfer of his interest in this IRA—although adverse tax consequences would follow certain transfers or withdrawals.

An electronic search of *Ala.Code* § 19–3–1(b) citation revealed only one case in this bankruptcy context. It is *In re Slepian,* 170 B.R. 712 (Bankr.S.D.Ala.1994) (cited in pleadings in this case). In *Slepian,* the Bankruptcy Court held that, while a Chapter 7 debtor's ERISA-qualified pension plan was excluded from his bankruptcy estate under Section 541(c)(2), his IRA was not. The court found the debtor had control over the corpus of the account subject only to early withdrawal tax penalties. It held that this circumstance did not meet the Section 541(c)(2) requirement for an actual restriction.

This court concludes that the Harless IRA is not excluded from the Bankruptcy Estate under 11 U.S.C. § 541(c)(2) because the debtor controls the account. The IRA became property of the bankruptcy estate created by the operation of 11 U.S.C. § 541(a) on October 6, 1994 when the Harlesses filed their Chapter 7 petition.

### II.

**The Alabama Legislature had both the power and the intent to exempt IRAs and other retirement assets from debt collection when it adopted Ala.Code § 19–3–1(b) in 1990.**

A. **Property which has become part of a bankruptcy estate under Section 541(a) may subsequently be claimed back as exempt under either the federal exemption scheme of Section 522 or state law exemptions. In Alabama, an "opt-out" state, the state law exemptions are the debtor's *only* alternative.**

■ A state may not by words alone declare an unrestricted fund *excluded* from the

**10.** *Louisiana Public Service Commission v. F.C.C.* provided the following guidelines for Congressional preemption or nullification of state statutes under the Supremacy Clause of the United States Constitution (U.S. Const. art. VI, § 2):

> The Supremacy Clause of Art VI of the Constitution provides Congress with the power to pre-empt state law. Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, *Jones v. Rath Packing Co.,* 430 U.S. 519, 51 L.Ed.2d 604, 97 S.Ct. 1305 (1977), *when there is outright or actual conflict between federal and state law,* e.g., *Free v. Bland,* 369 U.S. 663, 8 L.Ed.2d 180, 82 S.Ct. 1089 (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 10 L.Ed.2d 248, 83 S.Ct. 1210 (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 77 L.Ed.2d 490, 103 S.Ct. 2890 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice v. Sante Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz,* 312 U.S. 52, 85 L.Ed. 581, 61 S.Ct. 399 (1941). (emphasis added)

*Louisiana Public Service Commission,* 476 U.S. at 368–69, 106 S.Ct. at 1898.
*See also In re Snape,* 172 B.R. 361, 362 (Bankr. M.D.Fla.1994); *State of Arkansas v. Federated Department Stores, Inc.,* 175 B.R. 924, 928 (S.D.Ohio 1992) and *In re Syrtveit,* 105 B.R. 599, 605–06 (Bankr.D.Mont.1989).

bankruptcy estate under 11 U.S.C. 541(c)(2). However, that limitation does not apply to a state's power to make an unrestricted fund *exempt* from the bankruptcy estate under 11 U.S.C. § 522(b).

The Harlesses have argued that, if this court holds that the IRA is property of the estate, it may be claimed as exempt under *Ala.Code* § 19–3–1(b).

■ Once property becomes part of a bankruptcy estate by operation of federal law, a debtor may claim certain interests back as exempt under either federal or state law.

Alabama is what is known as an "opt-out" state in bankruptcy. This means that the State Legislature chose to "opt out" of the federal exemption scheme set up in the Bankruptcy Code itself. *See* 11 U.S.C. § 522(b)(1) and (b)(2)(A) [11] which states two alternatives on exemptions.

■ If a state elected to go under the federal scheme, a debtor may choose the federal exemptions at Section 522(d) of the Bankruptcy Code; *or* exemptions under law of the forum state and any federal exemptions *other than those found in Section 522(d)*. *See* Section 522(b)(2)(A). However, the debtor could not pick and choose from both federal and state exemptions in the same bankruptcy case.

If a state chose to "opt out" of the federal exemption scheme (*see* Section 522(b)(1)), limiting bankruptcy debtors to state law exemptions, it could do so by legislative act under authority delegated to it by Congress in 11 U.S.C. § 522(b).[12] In 1980, after enactment of the federal Bankruptcy Act of 1978, Alabama "opted out" with *Ala.Code* § 6–10–11 which provides:

> In cases instituted under the provisions of Title 11 of the United States Code entitled "Bankruptcy," there shall be exempt from the property of the estate of an individual debtor *only that property and income which is exempt under the laws of the State of Alabama and under federal laws other than Subsection (d) of Section 522 of said Title 11 of the United States Code.* (emphasis added)

So Alabama residents may protect from the bankruptcy estate and trustee those assets which the legislature has chosen or chooses to make exempt under state law.

**B. The Eleventh Circuit Court of Appeals has held that IRAs may be protected from the bankruptcy estate if they are claimed as exempt under effective state law.**

The Bankruptcy Code delegates to "opt-out" states the authority to designate what property can be exempted in bankruptcy. Any constitutionally sound state law exemption, which does not conflict with other por-

---

11.  **11 U.S.C. § 522(b)** provides in pertinent part:

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is
>
> (1) property that is specified under subsection (d) of this section, *unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize;* or, in the alternative,
>
> (2)(A) *any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition* at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; ... (emphasis added)

12.  The Eleventh Circuit Court of Appeals noted in *Hall v. Finance One of Georgia, Inc. (In re*

*Hall*), 752 F.2d 582 (11th Cir.1985) that Congress delegated to the states broad authority to choose the kinds and amounts of property a debtor could exempt in bankruptcy, so long as the exemptions did not conflict with other parts of the Bankruptcy Code:

> *But see Giles*, [*Giles v. Credithrift of America, Inc. (In re Pine* )], 717 F.2d [281] at 284 [ (6th Cir.1983) ] (Congress expressed preference for state control of exemptions by enacting the "opt-out" provision *without limitation;* therefore, it is doubtful that Congress intended section 522(f) to limit the kind of property states could define as exempt). In granting the states the power to opt out of the federal list of exemptions, *Congress did not appear to place any limits on the states' ability to do so.* This broad grant of power, however, does not mean that Congress authorized the states to enact legislation that conflicts with any other provision of the Bankruptcy Code.... (emphasis added)

*Hall*, 752 F.2d at 587.

tions of the Bankruptcy Code, becomes part of the bankruptcy scheme in an "opt-out" state.

The federal retirement exemption (available only in non-"opt-out" states), Section 522(d)(10)(E)(iii), exempts *payments* under IRAs from the bankruptcy process. It provides:

(d) The following property may be exempted under subsection (b)(1) of this section: . . .

(10) The debtor's right to receive—

(E) *a payment under a* stock bonus, *pension,* profitsharing, annuity, *or similar plan* or contract on account of illness, disability, death, *age or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—* . . .

(iii) *such plan* or contract *does not qualify under section* 401(a), 403(a), 403(b), *408,* or 409 of the Internal Revenue Code of 1954. (emphasis added) [13]

As various pension plans have become more of an issue in bankruptcy, many states have adjusted their state law exemptions to protect these assets. Some states have tracked the language of the federal exemption with a state law, even though they have rejected the federal exemptions as a whole. Others have allowed broader protection for retirement assets than is found in the federal exemption.

Florida is an "opt-out" state which granted a broader exemption. In *Schlein v. Mills* (*In re Schlein* ), 8 F.3d 745 (11th Cir.1993), the Eleventh Circuit held that a Chapter 7 debtor could exempt his IRAs from the bankruptcy estate under Florida's state law exemption. The debtor, a medical doctor, thus retrieved $162,752.70 from the estate. (The decision overruled both the district and bankruptcy courts below.) Florida did not even repeat the language of Bankruptcy Code Section 522(d)(10) in one exemption statute—it just named the section.

As the Eleventh Circuit noted in *Schlein:*

Florida law provides for an "opt out/opt in" scheme for its debtors who file for protection under the Bankruptcy Code. First, Fla.Stat. § 222.20 establishes the general nonavailability of the federal bankruptcy exemptions under 11 U.S.C. § 522:

In accordance with the provision of s. 522(b) of the Bankruptcy Code of 1978 (11 U.S.C. s. 522(b)), *residents of this state shall not be entitled to the federal exemptions provided in s. 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. s. 522(d)). Nothing herein shall affect the exemptions given to residents of this state by the State Constitution and the Florida Statutes.*

Fla.Stat. § 222.201 then opts the state back in as far as exemptions in Bankruptcy Code § 522(d)(10) are concerned:

(1) Notwithstanding s. 222.20, an individual debtor under the federal Bankruptcy Reform Act of 1978 may exempt, in addition to any other exemptions allowed under state law, any property listed in subsection (d)(10) of s. 522 of that act.

*Schlein,* 8 F.3d at 748–49.

Additionally, the appeals court noted that another Florida statute provided an even broader state law exemption for such financial entities as IRAs. This statute (Fla.Stat. § 222.21(2)(a)) read:

Except as provided in paragraph (b), *any money or other assets payable to a participant or beneficiary from,* or *any interest of any participant or beneficiary in,* a *retirement* or profit-sharing *plan that is qualified under* s. 401(a), s. 403(a), s. 403(b), *s. 408,* or s. 409 of the Internal Revenue Code of 1986, as amended, *is exempt from all claims of creditors of the beneficiary or participant.* (emphasis added)

*Schlein,* 8 F.3d at 749.

Thus, Section 222.21(2)(a) sheltered the accumulation in an IRA as well as "payments."

---

**13.** For cases filed after October 22, 1994, the Bankruptcy Reform Act of 1994 adjusted the last part of this section slightly so that it reads:

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b) *or 408 of the Internal Revenue Code of 1986.* (adjusted language underlined)

The main issue in *Schlein* was preemption of state law by ERISA. The lower courts had held that Florida's retirement (IRA) exemption statutes had been preempted and were invalid. The Eleventh Circuit reversed, holding the state laws were saved by a narrow exception to preemption found at Section 514(d) of ERISA, codified at 29 U.S.C. § 1144(d).[14] The appeals court held the Florida laws were effective to exempt the Chapter 7 debtor's IRAs from the bankruptcy estate. *See also In re Green,* 178 B.R. 533 (Bankr.M.D.Fla.1995).

### C. Many states have updated their exemptions in recent years to shelter retirement assets from debt collection.

An aging population, a rising tide of personal bankruptcies and economic pressures that have left a retirement plan as many debtors' major lifetime asset—these factors have combined to bring the exemption issue into sharp focus.

In 1994, the District Court for the Southern District of Georgia (another "opt-out" state) upheld the Bankruptcy Court in finding that a Chapter 7 debtor in that state could not exempt the corpus of her IRA from the bankruptcy estate under then-existing Georgia law. In *Meehan v. Wallace (In re Meehan),* 173 B.R. 818 (S.D.Ga.1994), the Chapter 7 debtor relied on the following statutes *Ga.Code Ann.* §§ 44–13–100(a)(2)(E) and (a)(2.1)(C)) to exempt her IRA from the bankruptcy estate.

Section 100(a)(2)(E) tracks the language of Bankruptcy Code Section 522(d). The relevant provisions of § 44–13–100(a)(2)(E) are as follows:

> (a) ... *[A]ny debtor who is a natural person may exempt,* pursuant to this article, for purposes of bankruptcy, the following property:
>
> (2) *The debtor's right to receive:*
>
> (E) *A payment under a pension,* annuity, or *similar plan* or contract *on account of* illness, disability, death, *age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;* ... (emphasis added)

*Meehan,* 173 B.R. at 821–22.

The District Court found the debtor could not protect the corpus of Ms. Meehan's IRA because this exemption applied only to payments; and the other statute, which would have exempted the whole fund, did not cover IRAs. The court found Section 100(a)(2.1)(C) applied only to certain public or quasi-public employee pension plans and to private plans established by employers.

---

14. **29 U.S.C. § 1144(a)** provides as follows:

(a) **Supersedure; effective date.** Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in any employee benefit plan described in section 4(a) [29 USCS § 1003(a)] and not exempt under section 4(b) [29 USCS § 1003(b)]. This section shall take effect on January 1, 1975.

Some courts seized in the sweeping "relate to" language to hold ERISA preempted any state law that mentioned a retirement plan. The Eleventh Circuit took a more pragmatic view. It cited Section 514(d) of the original act, now codified at 29 U.S.C. § 1144(d) which states:

(d) **Alteration, amendment, modification, invalidation, impairment, or supersedure of any law of the United States prohibited.** Nothing in this title shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States ...

Therefore, the Eleventh Circuit reasoned, 11 U.S.C. § 522(b) which expressly shared federal power to create bankruptcy exemptions with the states, even allowing "opt-out" states to choose to limit exemptions to state law, was not superseded by ERISA. Since it was not superseded, the state law exemption scheme allowed in the federal bankruptcy process could not be superseded either.

As the *Schlein* opinion pointed out:

*The Bankruptcy Code was enacted as a comprehensive scheme to regulate debtor-creditor relationships after the filing of a bankruptcy petition.* As part of this scheme, responsibility for defining what property debtors will take out of bankruptcy is shared with the states. *ERISA,* on the other hand, *is a comprehensive regulatory program that governs employer-employee relations in the area of private employee benefit plans.* Congress made clear that it did not want the states to interfere in this area. But as the Supreme Court has taught us, this does not mean that Congress intended ERISA preemption to ride roughshod over other areas of federal legislation, whether it be Title VII, the Bankruptcy Code, or other comprehensive federal schemes. (emphasis added)

*Schlein,* 8 F.3d at 753.

The Georgia Legislature this year amended *Ga.Code Ann.* § 44–13–100(a)(2.1) to include IRAs, creating an exemption for the principal of the account as well as payments.

It seems probable that the result in *Meehan* would have been different under the new statute. Georgia's legislative action is part of a trend among the states to protect all types of retirement assets from debt collection, both within and without bankruptcy.

In *Walker v. Mather (In re Walker )*, 959 F.2d 894 (10th Cir.1992), the appeals court upheld a relatively new Oklahoma statute exempting a bankruptcy debtor's IRAs and Keogh-type retirement plans from the bankruptcy estate. The trustee had challenged the exemption of the funds as a violation of the contract clause of the U.S. Constitution (U.S. Const. art. 1, § 10, cl. 1) because creditors' debts were created by contracts entered before enactment of the IRA exemption. *See Okla.Stat.Ann.* tit. 31, § 1A(20).

Oklahoma is an "opt-out" state and its law exempting IRAs and other retirement type plans is more favorable to debtors than the federal exemption. The appeals court held that enactment of the exemption was a valid exercise of Oklahoma's inherent police powers.

In 1991, the 10th Circuit had also upheld a 1988 Colorado law, *Colo.Rev.Stat.Ann.* § 13–54–104(2)(a) which allowed debtors in bankruptcy to exempt 75 percent of the balance of their IRAs from the bankruptcy estate. In *Kulp v. Zeman (In re Kulp )*, 949 F.2d 1106 (10th Cir.1991), the court rejected the bankruptcy trustee's argument that the exemption should apply only to accumulated interest in the account.

Colorado's 75 percent exemption applied to "earnings," the appeals court said. Under Section 13–54–104(1), "earnings" was defined to include the body and proceeds of an IRA:

(1)(b) "Earnings" means compensation paid or payable for personal services, whether denominated as ... *avails of any pension or retirement benefits*, or a deferred compensation plan ... or otherwise....

(1.1) For purposes and only *for the purpose of claiming an exemption in bankruptcy*, "avails of any pension or retirement benefits or deferred compensation plan" means profits or proceeds in any pension or retirement plan, including those in which the debtor has received benefits or payments or has the present right to receive benefits or payments or has the right to receive benefits or payments in the future and including ... *avails of any individual retirement account*, as defined in 26 U.S.C. § 408....

As cited in *Kulp,* 949 F.2d at 1107.

The 10th Circuit also pointed to the legislative history of the exemption which stated:

The purpose of the bill was to allow a debtor in bankruptcy to claim an exemption for ERISA plans, *IRA accounts,* KEOGH plans, and any kind of pension or plan in which the debtor has received payments or has a present or future right to receive payments. (emphasis added by 10th Circuit)

Senate Committee of Reference Report, Committee on Business Affairs and Labor, Explanation to Amendment to H.B. 1237 (1988) as cited in *Kulp,* 949 F.2d at 1108.

The court held 75 percent of the principal and accumulated interest in the IRA was exempted from the bankruptcy estate by the law.[15]

---

15. In 1995, Maine revised *Me.Rev.Stat.Ann.* tit. 14, § 4422 (West 1995) to include the language of the federal bankruptcy exemption for retirement plans at Section 4422(13)(E). In 1989, New York amended its state law exemptions to protect rollover IRAs from levy and debt collection. *See Bank of Leumi Trust Company of New York v. Dime Savings Bank of New York, FSB,* 85 N.Y.2d 925, 626 N.Y.S.2d 999, 650 N.E.2d 846 (1995) and *N.Y.Civ.Prac.L. & R.* 5205(c)(1) and (2). Massachusetts also has a relatively new law exempting IRAs from all debt collection and insolvency process, as cited in *In re Printy,* 171

B.R. 448 (Bankr.D.Mass.1994), *Mass.Gen.L.* ch. 235, § 34A (West Supp.1994). However, Massachusetts decreed the exemption would not apply to sums "in excess of seven percent of the total income" of the debtor within five years of the bankruptcy or judgment. *See also Arkison v. Nelson (In re Nelson )*, 180 B.R. 584 (9th Cir. BAP1995) (Washington state exempts IRAs from the bankruptcy estate) and *In re J. Van Nostrand,* 183 B.R. 82 (Bankr.D.N.J.1995) (court found debtor's IRA was property of the estate but could be claimed as exempt under New Jersey law) and *In re Syrtveit,* 105 B.R. 599 (Bankr.D.Mont.1989)

The Fifth Circuit Court of Appeals held in *NCNB Texas National Bank v. Volpe* (*In re Volpe* ), 943 F.2d 1451 (5th Cir.1991) that a Texas exemption statute, amended in 1989, placed no limit on the number of IRAs a debtor could exempt from the bankruptcy estate. (Texas is not an "opt out" state. Debtors may choose either federal or state law exemptions.)

The Texas law is a straight-forward exemption from execution:

> ... [a] person's right to the assets held in or to receive payments, whether vested or not, under ... an individual retirement account ... is exempt from attachment, execution, and seizure for the satisfaction of debts unless the plan, contract, or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986....

*Volpe*, 943 F.2d at 1453.

The Fifth Circuit also noted subsequent legislative history, amendments to the section effective September 1, 1989, as buttressing its conclusion that the Texas Legislature intended no limit on the number of IRAs which could be exempted:

> ... [t]he section no longer refers to "a" plan or "the" plan, but rather refers to "any" plan. *See* Tex.Prop.Code Ann. § 42.0021(a) (Vernon Supp.1991) (a debtor can exempt the assets "under *any* individual retirement account or *any* individual retirement annuity").

*Volpe*, 943 F.2d at 1452.

So the Alabama Legislature was not alone in its attempt to shield retirement assets from debt collection. The question before this court is whether *Ala.Code* § 19–3–1(b) is *effective* to create a state law exemption from the bankruptcy estate for IRAs.

(A 1989 overhaul of *Mont.Code Ann.* § 32–2–106 to exempt IRAs and other retirement assets could not be effective for cases filed before its enactment because 11 U.S.C. § 522(b)(2)(A) allowed only exemptions effective on the bankruptcy petition date.)

**D. The legislature, when it enacted *Ala. Code* § 19–3–1(b), intended to treat all retirement assets which received preferential treatment under the Internal Revenue Code equally, and it intended to protect *all* from creditors, within bankruptcy and without.**

1. *When Alabama enacted Section 19–3–1(b), retirement assets had increasingly become targets for bankruptcy trustees. Additionally, ERISA-qualified plans in the state appeared in danger of losing their tax preferences, harming all participants, not just bankruptcy debtors.*

As the economy shifted gears in the 1980s and individual bankruptcy filings rose, increasingly, the major asset bankruptcy trustees could look to for creditors was the debtor's retirement benefit—in ERISA-qualified company plans, IRAs or other retirement funds which received preferential treatment under the Internal Revenue Code.

To fully understand the context in which the Alabama Legislature enacted *Ala.Code* § 19–3–1(b) in 1990, it is also necessary remember that the amendment came *before* the Supreme Court's 1992 *Patterson v. Shumate* [16] decision. *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985) controlled.

*Lichstrahl* stated plainly (750 F.2d at 1490):

> ... [E]RISA-qualifying pension plans containing anti-alienation provisions are excluded (from the bankruptcy estate) pursuant to section 541(c)(2) *only if they are enforceable under state law as spendthrift trusts.* (emphasis added)

In Alabama, that meant that many employer-sponsored, ERISA-qualified pension plan assets could not be protected from the bankruptcy trustee.

In 1987, following the *Lichstrahl* mandate, U.S. District Judge Sam Pointer held that a debtor's assets in Gulf States Paper Corp.'s

**16.** 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

ERISA-qualified pension plan could be reached by the bankruptcy trustee. *See Stilson v. Gulf States Paper Corp. (In re Pilkington )*, 89 B.R. 911 (N.D.Ala.1987). The decision found the anti-alienation clause in the Gulf States plan, though acceptable under ERISA, was not enforceable as a "spendthrift trust" under Alabama law. The debtor's pension asset could not be excluded from the bankruptcy estate under Section 541(c)(2), the case held.

These decisions caused great concern among all associated with retirement assets. If a bankruptcy trustee could reach into an ERISA-qualified plan and extract assets for debt collection, so could all other creditors, they reasoned.

Since ERISA required that such plans be invulnerable to debt collection, they feared that every ERISA-qualified plan in Alabama could lose the federal tax preference, causing *all* participants to suffer, not just debtors in bankruptcy.

In this environment, sponsors of what is now Section 19–3–1(b) introduced legislation that became Act. 90–561 in the 1990 Regular Session of the Alabama Legislature.

2. *The Alabama Legislature intended to protect all retirement assets given preferred treatment under the Internal Revenue Code from all debt collection.*

The Legislature stated what it intended plainly in the preamble section to Act 90–561: [17]

Enrolled, An Act, to amend Section 19–3–1, Code of Alabama, 1975 in order to *exempt from attachment, execution, or seizure, the operation of certain bankruptcy or insolvency laws or under any legal process whatsoever,* the *right of a debtor to pension and retirement funds* or disability and death benefits *accruing under any retirement plan, certain employee benefit plans, or certain other arrangements,* and to provide that such exemption does not extend to benefits under any such plan to certain dependents of a participant, to cer-

tain plan loans, and certain other arrangements in conformity with federal income tax law and the federal Employee Retirement Income Security Act of 1974, as amended. (emphasis added)

The major purpose of the act, in the legislature's own words, was to protect a variety of retirement assets from *all* debt collection process. That has been the trend in most of the states which have updated such laws.

Such acts acknowledge the need to preserve retirement assets for the public good as well as that of the individual debtors. The laws also recognize that a variety of retirement assets must be covered in an economy where Americans may change jobs many times and cannot expect the same company and its ERISA-qualified pension plan to carry them from graduation to the grave.

*Ala.Code* 19–3–1(b)(1) states that the retirement assets covered "shall be exempt from the operation of any bankruptcy or insolvency laws under 11 U.S.C. § 522(b)." Additionally, Section 19–3–1(b)(5)(a)(4) includes: "The operation of any bankruptcy or insolvency laws under 11 U.S.C. § 522(b) as from time to time amended. . . ." in the debt actions it prohibits.

Section 19–3–1(b)(4), "INTERPRETATION" also states: "It is further intended for this section to provide an exemption from creditors' claims under 11 U.S.C. § 522."

In its specific detail, the act obviously attempted to cure the problem created for ERISA-qualified retirement plans by the *Lichstrahl* and *Pilkington* decisions. In this regard, it attempted to prevent the retirement assets covered from ever entering a bankruptcy estate under 11 U.S.C. § 541(c)(2). All of the language dealing with this issue is preempted for IRAs because it is in direct and actual conflict with Section 541(c)(2).

Two years after *Ala.Code* 19–3–1(b) was enacted, *Patterson v. Shumate* made the 541(c)(2) issue moot for ERISA-qualified plans. It abrogated the position taken by *Lichstrahl* and four other circuits by holding

17. **Ala. Const. art. IV, § 45** requires:
... [E]ach law shall contain but one subject, *which shall be clearly expressed in its title* ...

(emphasis added)

that the anti-alienation clause required for ERISA, like state spendthrift trust laws, satisfied the actual "restriction" requirement of 11 U.S.C. 541(c)(2). The *Patterson* decision did what the Alabama statute failed to achieve—it kept ERISA-qualified plans from ever becoming part of the bankruptcy estate.

Federal law controls and preempts any conflicting state statutes on the issue of *exclusion* from the bankruptcy estate under Section 541(c)(2). On the other hand, in "opt-out" states, state law controls *exemption* from the bankruptcy estate once it is created.

The Alabama Legislature had the power, delegated to it by Congress, to define the property a debtor can claim back as exempt from the bankruptcy estate. It is plain that the Legislature intended to use this power to allow debtors to exempt their IRAs and the other retirement assets covered by Section 19–3–1(b).

The remaining question is whether, once the preempted and/or moot language is pruned away, what remains of Section 19–3–1(b) actually accomplishes the exemption the Alabama Legislature intended. The question is one of severability.

## III.

*Under Alabama law, the valid portion of Ala.Code 19–3–1(b) must be given effect to create an exemption for IRAs and the other retirement assets covered.*

A. **Considering all the circumstances, the effective portions of Section 19–3–1(b) must be construed to exempt IRAs and the other retirement assets from debt collection process in general and from the bankruptcy estate in particular.**

1. *In severability cases, the courts must attempt to give effect to the intention of the legislature, if that is at all possible.*

■ As Alabama Supreme Court Justice Hugh Maddox so aptly put it in *Beck v. State,* 396 So.2d 645, 658 (Ala.1981): "The guiding star in severability cases is legislative intent." Alabama law on severability is well established: the courts should do everything

possible to preserve the intended function of a law which has been found to be partially invalid or unconstitutional.

In *Beck,* the Alabama Supreme Court cited from much older cases to establish certain guidelines for determining severability:

In *A. Bertolla & Sons v. State,* 247 Ala. 269, 271, 24 So.2d 23 (1945), this Court stated:

One of the tests used to determine whether an act is or is not severable, so that a portion may be rejected, is that it ought not to be held wholly void unless the invalid portion is so important to the general plan and operation of the law in its entirety *as reasonably to lead to the conclusion that it would not have been adopted if the legislature had perceived the invalidity of the part so held to be unconstitutional.* Where the valid and invalid parts are so bound together that the invalid part is a *material inducement* to the valid portion, the whole is invalid. *Union Bank & Trust Co. v. Blan,* 229 Ala. 180, 155 So. 612 [ (1934) ], … (emphasis added by Alabama Supreme Court)

Another principle of severability is stated in *Wilkins v. Woolf,* 281 Ala. 693, 697, 208 So.2d 74 (1968), as follows:

Another guiding principle of paramount importance is that courts seek to sustain, and not strike down, the enactments of a coordinate department of government. Every legislative act is presumed to be constitutional and every intendment is in favor of its validity. *Tucker v. State,* 231 Ala. 350, 165 So. 249 [ (1935) ]; *Gray v. Johnson,* supra [235 Ala. 405, 179 So. 221 (1938) ]. *Although a statute may be invalid or unconstitutional in part, the part that is valid will be sustained where it can be separated from that part which is void. State ex rel. Farmer v. Haas,* 239 Ala. 16, 194 So. 395 [ (1940) ]. *If after the deletion of the invalid part, the remaining portions of an Act are complete within themselves, sensible, and capable of execution, the Act will stand notwithstanding its partial invalidity. Springer v. State ex rel.*

*Williams,* 229 Ala. 339, 157 So. 219 [ (1934) ]. (emphasis added)

*Beck,* 396 So.2d at 658.

■ Under Alabama law, the presence of a severability clause within the partially invalid law strengthens the presumption that the valid portion should be given effect. *See Beck,* 396 So.2d at 658.

Further, the Alabama Code itself includes an omnibus severability clause at *Ala.Code* § 1–1–16 [18] which saves portions of acts lacking individual severability clauses.

As noted in *City of Birmingham v. Smith,* 507 So.2d 1312, 1315 (Ala.1987):

If a portion of a legislative enactment is determined to be unconstitutional but the remainder is found to be enforceable without it, a court may strike the offending portion and leave the remainder intact and in force. Courts will strive to uphold acts of the legislature. The inclusion of a severability clause is a clear statement of legislative intent to that effect, but the absence of such a clause does not necessarily indicate the lack of such an intent or require a holding of inseverability.

2. *Ala.Code § 19–3–1(b) is to be construed as giving effect to the Legislature's intent to exempt the retirement assets covered "from any legal process (debt collection) whatsoever", including efforts of the bankruptcy trustee.*

■ When the statutory and common law guidelines for determining severability are applied to *Ala.Code* § 19–3–1(b), the law must be construed to create a valid exemption from debt collection, including that by the bankruptcy estate and its trustee.

First, the intent of the Alabama Legislature is clearly stated to be exemption of a debtor's rights in *"any* retirement plan" from *all* debt collection in the preamble to Act 90–561. The same intent is expressly stated in the text of the amended statute as well.

Second, *Ala.Code* § 19–3–1(b) contains the material components to create a free-standing exemption from all debt collection with the invalid language deleted.[19]

*Ala.Code* § 19–3–1(b)(1) provides that the benefits under a "qualified trust" may not be "assigned or alienated, voluntarily or involuntarily".[20]

Under *Ala.Code* § 19–3–1(b)(5)(d), "qualified trust" is defined to include IRAs. Under Section 19–3–1(b)(5)(a), the terms "assignment or alienation" are defined to include the following debt collection actions "attachment, garnishment, levy, execution, or other legal or equitable process...." as well as:

Any attachment, execution, seizure, or the like, or under any form of legal process whatsoever; and

(4) *The operation of any bankruptcy or insolvency laws under 11 U.S.C. § 522(b) as from time to time amended.* (emphasis added)[21]

*Ala.Code* 19–3–1(b) contains language that, standing alone, is effective to create an en-

---

18. **Ala.Code § 1–1–16** provides:

**Severability of provisions of Code and statutes.** If any provision of this Code or any amendment hereto, or any other statute, or the application thereof to any person, thing or circumstances, is held invalid by a court of competent jurisdiction, such invalidity shall not affect the provisions or application of this Code or such amendment or statute that can be given effect without the invalid provisions or application, and to this end, the provisions of this Code and such amendments and statutes are declared to be severable.

19. Although Title 6, Chapter 10 of the Alabama Code is labelled "Exemptions" and contains many exemptions used against creditors in and outside of bankruptcy, other equally valid exemptions are scattered through other titles of the code and the Constitution of 1901. Pre–1990 exemptions of other retirement benefits include: *Ala.Code* § 16–25–23, Teachers Retirement Sys-

tem; *Ala.Code* § 36–21–77, benefits and annuities for state and local peace officers; and *Ala. Code* § 36–27–28, State Employees Retirement System.

20. **Section 19–3–1(b)(1)** provides;

(1) PROHIBITION ON ASSIGNMENT.—*Any benefits provided under a plan* which includes a trust *that constitutes a "qualified trust" may not be assigned or alienated,* voluntarily or involuntarily, *and shall be exempt from the operation of any bankruptcy or insolvency laws under 11 U.S.C. § 522(b), as from time to time amended.* This subdivision may not be waived by a participant or beneficiary of any qualified plan. (emphasis added)

21. **Section 19–3–1(b)(5)(a)** provides in full:

(5) DEFINITIONS.
a. The term "assignment or alienation," and any conjugation thereof, includes any anticipa-

forceable state exemption. The sections remaining after the invalid portions are excised are "complete within themselves, sensible and capable of execution, ..." as an exemption. *See Beck*, 396 So.2d at 658.

Third, there are adequate legal tools under state law to sever the exemption provisions from the ineffective language. Act 90–561 at Section 3 includes its own severability clause stating:

> The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.

Furthermore, even if it did not, *Ala.Code* § 1–1–16 would apply to preserve the valid portion of the statute.

*Ala.Code* § 19–3–1(b) provides an enforceable exemption for IRAs and the other retirement assets covered from debt collection in general and the bankruptcy estate in particular.

3. *The trustee may not reach the Harless IRA since the debtors properly claimed the account as exempt from the bankruptcy estate under Ala.Code § 19–3–1(b).*

■ October 6, 1994, the Harlesses filed Schedule C, Property Claimed as Exempt (BK Doc. 1), which listed "IRA Account at AmSouth Bank" (then totalling $7,961.48) as exempt from the bankruptcy estate under *Ala.Code* § 19–3–1(b). That claim of exemption is effective to protect the IRA from the estate.

The trustee may not reach the IRA for distribution to the Harlesses' creditors and for other expenses of the bankruptcy estate.

tion, assignment (either at law or in equity), alienation, *attachment, garnishment, levy, execution or other legal or equitable process. Moreover, such term includes:*
1. Any arrangement providing for the payment to the employer or other sponsor of such plan of benefits that otherwise would be due the participant under the plan;
2. Any direct or indirect arrangement (whether revocable or irrevocable) whereby any person acquires from a participant or beneficiary of such plan a right or interest enforceable against the plan in, or to, all or any part of the plan benefit which is, or may become, payable to the participant or beneficiary;

## CONCLUSION

The Harlesses' Individual Retirement Account became part of the debtors' bankruptcy estate when they filed their Chapter 7 petition, October 6, 1994. The account could not be *excluded* from the estate by 11 U.S.C. § 541(c)(2) since there was no actual "restriction on the transfer of a beneficial interest of the debtor." Language in *Ala.Code* § 19–3–1(b) which purported to exclude IRAs from the estate is preempted because it conflicts with the controlling federal statute.

However, the Harlesses' October 6, 1994 claim of *exemption* under *Ala.Code* § 19–3–1(b) is effective to retrieve the account from the bankruptcy estate and protect it from the reach of the Chapter 7 trustee.

Consequently, the Harlesses' Motion for Summary Judgment is to be **GRANTED;** and the trustee's Motion for Summary Judgment must be **DENIED.** The trustee's complaint for turnover of the funds in the account is due to be **DISMISSED,** since the IRA has been effectively claimed as exempt and is no longer property of the bankruptcy estate.

These findings of fact and conclusions of law are entered pursuant to Fed.R.Bankr.P. 7052. A separate order will be entered which is consistent with this Memorandum of Decision.

### DONE AND ORDERED.

3. *Any attachment, execution, seizure, or the like, or under any form of legal process whatsoever; and*
4. *The operation of any bankruptcy or insolvency laws under 11 U.S.C. § 522(b) as from time to time amended.*
Notwithstanding the foregoing, "assignment and alienation" does not include those items excluded from such definition by Treasury Regulations § 1.401(a)–13(c)(2). (emphasis added)
While portions of this section are ineffective to place conditions on IRAs not required by 26 U.S.C. § 408, the state has the power (delegated by Congress) to protect IRAs and the other "qualified trusts" from bankruptcy process.